Shropshire *et al. vs.* Brown.

WESLEY SHROPSHIRE *et al.*, plaintiffs in error, *vs.* MARY BROWN, administratrix, defendant in error.

To entitle a complainant to a decree for a specific performance of a parol contract for the sale of land, the contract must first be established with reasonable certainty, and the consideration claimed to have been paid or rendered therefor must be clearly and satisfactorily proved to have been paid or rendered, in pursuance of that contract; otherwise, a specific performance of the alleged contract should be refused.

Specific performance. Before Judge HARVEY. Chattooga Superior Court. March Term, 1871.

The bill of Mary Brown, as administratrix of Warren Brown, averred as follows against Shropshire and Ward, as executors of William Brown, her father-in-law: In 1857, her husband lived in Arkansas and his father lived in Georgia. William Brown wrote to Warren that if he would come to Georgia and take charge of his plantation and slaves, and manage his business, he being old and feeble, he would compensate him for his sacrifices and expenses, etc., incurred in this matter. Pursuant to this agreement, he sold out his personalty at $500 less than it was worth, and returned to said plantation at an expense of $600, and took charge of

Shropshire *et al. vs.* Brown.

and controlled his father's business. In consideration of the premises, the father agreed to convey to Warren lot number thirty-one, in the twenty-fifth district of said county, in fee simple. The deed was not made, but pursuant to said contract Warren took possession of said lot and put improvements on it, costing him $500. William Brown suddenly died in July, 1858, testate, on his death-bed recognizing said trade and urging Shropshire to see that Warren should have a perfect title to said lot. Warren and his family lived on said lot from 1857 till 1863, when Warren died intestate, leaving complainant and one child him surviving. He had fully complied with his promise. She and her child still live on said lot, and yet Shropshire and Ward refuse to make a deed pursuant to said contract. She prayed that they be compelled to do so.

Shropshire filed no answer. Ward answered, denying said agreement *toto coelo.* An action of ejectment had been brought against complainant for said lot, and that case and the bill were tried together.

Shropshire testified, that early in 1857 he wrote a will for William Brown, before Warren came back to Georgia, but this will was not executed till about ten days before William Brown died. By it all his realty was given to his wife during her life, remainder to all of his children. He was then about sixty-five years old. Two days before he died, he sent for Shropshire, told him Warren had come to wait on him in his old age and had spent $600 in coming, and he wished him to make Warren a perfect title to said lot. (Several other witnesses testified to the same wish as then and at other times expressed by William Brown). After William Brown's death, his mother conveyed her life-estate in said lot to him, and afterwards, in the fall of 1858, Warren rented said lot from the executors, though he said it was his own. The letter alluded to was read in evidence, but contained nothing about his return but these words: "I was expecting you here and hope you will yet be able to come. Write to me immediate-

ly after you receive this, and write whether you can come or not, for I will want to make arrangements for the next year. If you can come, write to me what time you will be here. Your mother wants you to come very much." It was written the 28th of September, 1857.

A witness testified that Ward had said to him that he did not doubt but there was some such understanding as that averred, but that there was no writing, and, therefore, it would not hold. These witnesses testified also to the soundness of William Brown's mind when he made said declarations and request. Upon the conclusion of complainant's evidence, defendants moved for a non-suit, which the Court refused. The defendants put in evidence said will, showed that Warren had held the land as their tenant, and introduced several witnesses who gave facts to show that William Brown was not of sound mind for many days before his death, etc. One witness testified that Warren told him that he took a "wild-goose chase" through Arkansas and Texas, got back to Memphis, took a notion to return to Georgia, and came back unexpectedly to his father. There was no evidence as to the value of the lot.

The charge of the Court is sufficiently stated in the opinion. The jury found for the complainant. A new trial was moved for on various grounds and was refused. That is assigned as error.

WILLIAM H. DABNEY, for plaintiffs in error.

J. W. H. UNDERWOOD, for defendant.

WARNER, Chief Justice.

This was a bill filed by Mary A. Brown, administratrix of Warren Brown, against the executors of William Brown, deceased, to compel the specific performance of a parol contract for the sale of lot of land number thirty-one, in the twenty-fifth district of Chattooga county, alleged to have

been made between the complainant's intestate, Warren Brown, and the defendant's testator, William Brown.

On the trial of the case, the jury found a verdict for the complainant, decreeing a specific performance of the alleged contract. A motion was made for a new trial on several grounds; but the principal ground insisted on was that no contract was proved which would entitle the complainant to a decree for a specific performance of it, which motion was overruled and the defendants excepted. The answer to the complainant's bill denies the alleged parol contract. The testator, William Brown, made his will about ten days before his death, and devised his land, including the lot in controversy, to his wife during her life, and, at her death, to be sold and equally divided between his children named therein, one of whom was his son Warren. The evidence shows that the complainant's intestate was not in the possession of the lot of land until after his father's death. It is claimed that his father, in a letter written to Warren (who then lived in Arkansas), on the 28th September, 1857, requesting him to come and see him and expressing the hope that he would come, induced him to sell out there and move back to Georgia, at a sacrifice of $600; but there is not one word in that letter about any contract for the sale of the land to him. It is shown, by the evidence, that he came to his father's and lived there until his father's death, and that his father said to Shropshire and others a day or two before his death, "that his son Warren had come here to wait on him in his old age, and spent $600 to come, and he wanted to make him whole, and wanted Shropshire to see that his son Warren have a good title to his lower lot of land—a title they can't jostle him in." Kirby states that Ward, one of the executors of William Brown, in a discussion with him about his defense, said "that he had no doubt some understanding, as is stated in the bill, existed between the old man Brown and his son Warren, but Warren had no writing and his wife and children could not hold it." This is substantially the evidence in

the record to prove the parol contract for the sale of the land by William Brown to his son Warren, which it is sought to have specifically performed. To entitle the complainant to a decree for a specific performance of the alleged parol contract between William Brown and Warren Brown, for the sale of the lot of land, the contract must first be established with reasonable certainty, and the consideration claimed to have been paid or rendered must be clearly proved to have been paid or rendered in pursuance of that contract. The consideration claimed to have been paid by the complainant's intestate for the lot of land, was the damage and loss of $600, sustained by him in removing from Arkansas to Georgia, to attend to his father's business. Whether that sum was a full and adequate consideration for the lot of land the record does not inform us, as it contains no evidence of the value of the lot alleged to have been contracted for. The counsel for the defendants requested the Court to charget he jury, "that it does not require as much evidence to defeat a specific performance of a contract as it does to rescind a contract executed, and inadequacy *of* price or consideration may justify the Court and jury in refusing to decree a specific performance." The Court qualified the request by adding, "If such as to induce the jury to suspect imposition or fraud; when the contract is between father and son, that fact may be considered for what it is worth, in connection with the amount of consideration, and all the other facts and circumstances to enable you to determine whether this contract was fairly and *bona fide* made and obtained, if made at all." This qualification of the request by the Court to charge the jury was error, and especially so, in view of the facts of this case, there being no evidence of any fraud or imposition practiced upon the complainant's intestate. The increased value of land, resulting from the altered condition of our people, admonishes us that the well established principles which govern Courts of equity in decreeing the specific performance of parol contracts for the sale of real estate, ought not to be relaxed. In our

judgment the evidence disclosed in this record does not establish such a parol contract for the sale of the lot of land in controversy, as would authorize the Court and jury to decree a specific performance of it, according to the well recognized principles by which Courts of equity are governed and controlled in such cases.

Let the judgment of the Court below be reversed.