LANSDELL, administratrix, *v.* LANSDELL; *et vice versa.*

1. In its main features the first count of the equitable petition in this case was analogous to the equitable action involved in *Crawford* v. *Wilson*, 139 *Ga.* 654 (s. c. 142 *Ga.* 734), with some additional allegations. It was there ruled, that "A parol obligation by a person to adopt the child of another as his own, accompanied by a virtual though not a statutory adoption, and acted upon by all parties concerned for many years and during the obligor's life, may be enforced in equity upon the death of the obligor, by decreeing the child entitled as a child to the property of the obligor, undisposed of by will;" and that "Such an equitable suit is maintainable by the child in her own name against the administrators of the obligor." In the present case it was also alleged that shortly after the making of the agreement between the father of the plaintiff (then a child) and another person (since deceased, whose administratrix was the defendant), in regard to the adoption of the child, etc., and the delivery of the custody of the plaintiff to such person in 1874, the father of the plaintiff removed from Georgia to Arkansas, where he continued to reside and was so residing at the time when the suit was brought in 1913. *Held*, that, under the ruling in the case above cited, and under the allegations of the petition, the plaintiff could bring an equitable action in his own name, and it was not necessary to have it brought in the name of the plaintiff's father.

2. Under the allegations of the petition as to performance and a virtual, though not statutory, adoption of the plaintiff by the intestate of the defendant, and as to the acts of the plaintiff and the decedent, and the removal of the father from the State for nearly forty years, he was not a necessary party defendant to the equitable petition, even if in any case of the character of this the father might be a necessary party defendant.

(a) The prayers were similar to those in the case cited above, mutatis mutandis, and the first count of the petition was not demurrable because the plaintiff did not expressly pray for "specific performance."

3. The amended answer set up, among other things, that more than eight years before the death of the intestate he and the plaintiff became estranged through the fault and misconduct of the latter, who even used violence upon the intestate; that both of them disavowed and abandoned any such relationship as is claimed in the petition; that the intestate disavowed any obligation whatever to the plaintiff, and the plaintiff disavowed any claims on the intestate or his estate; and that this estrangement continued until the death of the intestate. *Held*, that there was no error in allowing an amendment more clearly alleging such facts, over objection on the ground, in substance, that neither the allegations of the answer nor those of the "plea" (answer) as amended set forth any defense. As against one who comes into a court having equitable jurisdiction, after the death of the intestate, and seeks to set up an equitable claim to a part of his estate under such a contract with the father of the plaintiff, and an alleged virtual though not formal adoption, the answer as above stated was not demurrable.

4. The second count of the petition was subject to special demurrer for lack of sufficient specification of the items of service rendered, and of their value. The seventh paragraph thereof was subject to special demurrer on the ground that it failed to state the time when the alleged contract was made and its terms.

JANUARY 15, 1916.

Equitable petition. Before Judge Walker. Columbia superior court. September 29, 1914.

*John T. West* and *Samuel H. Sibley,* for the administratrix.

*Holden & Shackelford,* for Eulie Lansdell.

LUMPKIN, J. The headnotes require no elaboration, except as to the third and fourth. Adoption of a child so as to give it a right of inheritance from its adopted parent is a matter of statute, and legal adoption is effected in the manner provided in the statute. Civil Code (1910), § 3016 et seq. In some cases reliance is had upon a claim to have specific performance of a contract to adopt, or to have a legacy, or to enforce equitable rights. Alleged parol contracts of the character of that here involved, by which the property of a man is taken from his estate after his death, or the inheritance of his heirs—perhaps his wife and children—is to be reduced or destroyed, should be clearly made out. In *Russell* v. *Switzer,* 63 *Ga.* 711, 725 (after citing certain cases) Bleckley, J., said: "None of these cases, however, are in point on the present discussion, further than they bear upon the requisites of general law concerning the fact of contract and the fulness and certainty of the evidence by which it is sought to be established. They inculcate a wholesome caution against building up imaginary contracts out of the expression of generous in-

tentions towards persons who, having rendered service, prefer claims for compensation after those whom they served have been removed by death. And the caution is doubly necessary where the claim presented. is not merely for just compensation on the basis of a quantum meruit, or to some specific article or articles of property, but goes to the entire estate, real and personal, which the decedent left behind him. Nor is it the less necessary because the heirs at law, if any there be, are remote rather than proximate kindred, or because they are foreigners. Every heir, and an heir of each degree and every nationality, must be secure of his inheritance, and one heir just as secure of it as another."

In Wall's Appeal, 111 Pa. St. 460 (56 Am. R. 288, 291), Green, J., said: "Claims of this nature against dead men's estates, resting entirely in parol, based largely upon loose declarations, presented generally years after the services in question were rendered, and when the lips of the party principally interested are closed in death, require the closest and most careful scrutiny to prevent injustice being done. We can not too often repeat the cautions we have so frequently uttered upon this subject, and we feel that the present occasion is one which demands both their repetition and their application."

The decision in *Crawford* v. *Wilson*, 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.) 773), s. c. 142 *Ga.* 734 (83 S. E. 667), should not be misunderstood. The facts alleged in that case involved, among other things, an agreement to adopt an infant, first made with her grandmother with the assent of the mother, and then ratified by the mother (the father having previously deserted her), the relinquishment of parental control, the treating of the child as that of the foster parent (the child not having known, until after the death of the foster parent that she was not her natural child), the rendering of services by the child, and the continuance of the relation for many years and until the death of the foster parent. It was held that the facts alleged gave to the child such an equitable status and such equitable rights as she could enforce in a court having equitable jurisdiction.

But one who thus seeks to set up rights, not legal but equitable, must occupy a position to enforce such rights in a court of equity. It was set up in the answer as amended, that, after the plaintiff became of age, and more than eight years before the death of the

foster father, they became estranged through the misconduct of the plaintiff; that both disavowed and abandoned any such relationship as is claimed in the petition, and both disavowed all claims by the plaintiff against the alleged· foster father or his estate; and that this estrangement continued until the death of the alleged foster parent. If such be the facts, the plaintiff can not establish his demand as a foster child who equitably should be treated as adopted, after the death of the foster parent, by an equitable petition claiming a part of the estate of the latter. See, in this connection, Burns *v.* Smith, 21 Mont. 251 (53 Pac. 742, 69 Am. St. R. 653).

The second count of the petition as amended set up the rendering of services by the plaintiff for the decedent during a number of years. The fifth paragraph as amended was as follows: "During the years 1895, 1896, 1897, 1898, and 1899, plaintiff for said Lansdell [the intestate] shod mules and horses, sharpened plows, repaired wagons and buggies, repaired and built houses,· repaired and built fences, ran engine for sawmill, engines for gins, carried cotton to hopper of gins, collected rents, looked after shipments of cotton, made settlements with employees and tenants, kept accounts, and generally aided· said Lansdell in superintending his business affairs, which work was done for the benefit of said William Lansdell, and at his special instance and request. Said services for said years, outside of the work done by plaintiff in making said crops, were worth the sum of $750.00 per year." The seventh paragraph as amended was as follows: "During the year 1894, and after January 1st, 1900, plaintiff never received from William Lansdell [the intestate] anything whatever; and during the years 1891, 1892, 1893, 1895, 1896, 1897, 1898, and 1899, plaintiff received nothing whatever from said William Lansdell or his property, except a bare living for himself up to the time of his marriage in 1893, which did not amount to over $200.00 per year, and no compensation whatever for said services and work rendered during said years above referred to, beginning on August 18th, 1891, when plaintiff became twenty-one years of age, and ending on the 1st of July, 1903. Said work and services above referred to were rendered because of the promise and agreement on the part of the said Lansdell that he would make suitable provision for plaintiff to be paid for said work out of his estate, at his death; and on the

faith of which promises and agreements plaintiff rendered and continued to render said work and services from year to year. After the marriage of plaintiff neither plaintiff nor his wife were maintained or supported by said William Lansdell. At the time said work and services referred to in this paragraph and the other paragraphs in said second count in said petition were begun, and at and during the time they were being performed, said William Lansdell promised and agreed with plaintiff that he would make suitable provision for plaintiff to be paid for said work out of his estate at his death; and because of and on the faith of said promises and agreements on the part of said William Lansdell plaintiff performed said work and services." The second count was demurrable for lack of sufficient specification of the items of service and of the value thereof. And the seventh paragraph (which alleged the promises or contract of the decedent) was subject to special demurrer on the ground that it failed to state the time when the alleged contract was made, and the terms thereof. *Bond* v. *Central Bank,* 2 *Ga.* 92, 100; *Warren* v. *Powell,* 122 *Ga.* 4 (49 S. E. 730) ; *City Council of Augusta* v. *Marks,* 124 *Ga.* 365 (52 S. E. 539). In *Banks* v. *Howard,* 117 *Ga.* 94 (43 S. E. 438), the demurrer under consideration was based on the grounds that no cause of action was set forth, and that the suit was barred by the statute of limitations. It did not involve a lack of sufficient specifications of debts in the petition.

In the case of Belle Lansdell, administratrix, plaintiff in error, *v.* Eulie Lansdell, defendant in error, the judgment is *reversed* in so far as it overruled the special demurrer to the second count of the petition for lack of sufficient specification of the services performed each year and the value thereof, and to the seventh paragraph on the ground that it does not sufficiently set out the date and terms of the contract sought to be set up. In the case of Eulie Lansdell, plaintiff in error, *v.* Belle Lansdell, administratrix, defendant in error, the judgment dismissing the first count of the petition is *reversed;* otherwise it is *affirmed.*

        *All the Justices concur, except Fish, C. J., absent.*