CHAMBLEE *et al v.* WAYMAN *et al.; et vice versa.*

Nos. 6628, 6629.  January 18, 1929.  Rehearing denied March 2, 1929.

*J. F. Kemp, M. R. Bennett,* and *Jones & Reid,* for Chamblee et al.
*T. B. Higdon,* contra.

Russell, C. J.   About the year 1899 Sallie Wayman, a childless colored woman living in Atlanta, entered into a contract with Jim Durden, the father of Dahlia Wayman and Nellie McWee, at Chattanooga, Tennessee, in which she agreed that she would take his two little girls, adopt them, educate them, and make them her heirs to inherit whatever property she might have.   In consideration of this promise Durden surrendered all rights as father of these infants, and delivered them to her, and she brought the girls, about 5 and 7 years of age at that time, to Atlanta.   Their mother was dead, and their father died shortly after they were placed in Sallie Wayman's possession.   The evidence as to the gift of his children by the father to Sallie Wayman is uncontradicted.   In January, 1926, Sallie Wayman, who in the meantime had remarried and had become Sallie Cobb, died intestate, leaving no blood relations nearer than first cousins, and without having legally adopted either Dahlia Wayman or Nellie McWee.   Dahlia Wayman was appointed temporary administratrix and as such took charge of Sallie Cobb's estate.   Hester Chamblee and Cleo Strickland filed a caveat to her appointment as permanent administratrix, and the county administrator, Frampton E. Ellis, was appointed administrator of the estate.   Dahlia Wayman and Nellie McWee filed their petition against the administrator, setting up the foregoing facts, and asking for a decree of specific performance of the oral contract of adoption made by Sallie Wayman with their father.   An answer was filed by the administrator, in which he neither admitted nor denied the material allegations of the petition.   An answer was filed by Hester Chamblee and Cleo Strickland as "intervenors," in which they denied the material allegations of the petition, and claimed to be first cousins of Sallie Cobb, and as such entitled to inherit her estate.   Upon the trial the jury returned a verdict for the plaintiffs, and a decree was taken on February 2, 1928, declaring them

to be the sole heirs at law of Sallie Cobb and as such entitled to receive the proceeds of the estate, and directing the administrator to specifically perform, as far as lay within his power, the contract of Sallie Cobb with petitioner's father to adopt them, by delivering to them the proceeds of the estate. On February 6, 1928, a motion for a new trial was filed in the name of Ellis, the administrator, and the "intervenors," by the same counsel who had filed the answer and the alleged intervention. On March 3, 1928, an order was granted by the court, reciting that the administrator was present and the intervenors were represented, and that the administrator expressed a desire to be relieved as a party, and ordering the administrator to be dismissed as a party in the cause and relieved from further liability as such, and that he be dismissed as movant in the motion for a new trial. On March 16, 1928, Hester Chamblee and Cleo Strickland filed an application for an order calling upon the petitioners to show cause why Chamblee and Strickland should not be made parties nunc pro tunc to the action as of the date of the filing of their intervention therein. A response to this rule was filed and the respondents denied the right of Chamblee and Strickland to be made parties to the cause or to have an order nunc pro tunc allowing their intervention, it being insisted that no order of the court had been taken allowing them to become parties to the motion for a new trial, and that, the cause having gone to judgment, they could not be made parties by intervention and were not entitled to an order nunc pro tunc making them parties to the cause as of the date of the filing of their alleged intervention, since there had been no order either making them parties or allowing the intervention at the time it was filed. It was further insisted that Hester Chamblee and Cleo Strickland were not entitled, as a matter of right, to become parties to the action, unless fraud or collusion could be shown between the administrator and the petitioners, and that there was no charge of that nature in the application. On April 1, 1928, the court granted an order making Hester Chamblee and Cleo Strickland parties to the suit, and allowing the intervention as of January 18, 1927, and making said parties defendants as of that date, and allowing them to proceed as movants in the motion for a new trial. Thereafter the court overruled the motion for a new trial. To that judgment the movants excepted. To the order allowing those movants to intervene and be made parties, the plaintiffs sued out their cross-bill of exceptions.

We shall first consider the questions raised in the main bill of exceptions. The exception is to the judgment in refusing a new trial, upon a motion made by the intervenors upon the rendition of a verdict in favor of the petitioners who claimed to have been virtually adopted by Sallie Wayman. The petitioners sued the administrator of the latter, to enforce specific performance of a contract alleged to have been made by the deceased with the father of the petitioners, in which she agreed to adopt, rear, educate, and make heirs of her estate the petitioners, and in consideration of which their father relinquished absolutely his parental control and delivered the children to the administrator's intestate. Aside from the general grounds there are four special grounds containing assignments of error.

So far as the general grounds are concerned, it suffices to say that there was abundant evidence of many witnesses establishing the fact that Sallie Wayman, or Cobb, always stated that she had adopted the two little girls, and that she called them her children. She frequently stated that she had adopted them. She paid bills for medical attention for them and sent them to several schools at which she paid tuition. She exercised complete control over their actions; and so far as Dahlia Wayman was concerned, she was apparently very delicate and sick most of the time, but when able to work she paid her wages to her adopted mother, as did Nellie McWee until her marriage. There was some evidence of circumstances which might indicate that one or both of the children were high-tempered and that on one or two occasions they left the home of their foster-parent, but these difficulties appear always to have subsided within a short time. The evidence of the gift of his two children by Jim Durden to Sallie Wayman, or Cobb, was wholly uncontradicted; and the witness was certainly swearing against his own interest, for it is admitted by all of the witnesses who had knowledge of the family relationships that this witness, Nace Candler, was himself a first cousin of the deceased, and would have received an equal share with the intervenors had they prevailed in their contention adverse to the claim of adoption. There is such a volume of evidence that we shall not attempt to even summarize it. A careful consideration of the evidence satisfies us that the jury was fully authorized to find the verdict returned. In the brief of counsel for the plaintiffs in error

there is no contention to the contrary of the statement just made, inasmuch as the general grounds of the motion are not referred to.

■ Counsel for plaintiffs in error in their brief say: "The ques-. tions presented are: (1) In an equitable bill against the administrator of a deceased person for specific performance of an oral contract made with the deceased by the father of the petitioners in the bill for their benefit, are the petitioners required to show partial or full performance on their part during their minority, or is it sufficient that they show performance by their father, that is, by his surrendering them according to his contract? (2) In such a case is the degree of proof required merely a legal preponderance of the evidence, or should the proof be so convincing as to leave no room for reasonable doubt? (3) In such a case could the parties recover if the contract had been abandoned before they became 21 years of age? (4) In such a suit are intervening parties, who contest plaintiff's rights, entitled to have notice of the taking of depositions of a witness for plaintiffs?" We shall first dispose of the fourth question by calling attention to the fact that the intervening parties in the present case had notice of the taking of the depositions of the witness Nace Candler, to which reference is made in the fourth ground of the motion for a new trial. In approving the grounds of the motion the court attached the following certificate with reference to ground 4: "It is further certified by the court, in connection with ground 4 of the foregoing amended motion, as shown by the original notice for taking the depositions of Nace Candler, said notice was duly served on the defendant administrator ten days before taking depositions, and said service on said defendant was admitted by counsel for intervenors [plaintiffs in error] at the trial." The original and proper defendant, the administrator, without whose presence the suit could not proceed, having been served with notice as required by law, the intervenors entered the case, and became parties therein (by order of the court entered nunc pro tunc after the trial), just as they found it. Furthermore, even if the intervenors were parties in the trial, the objection was not made as is required by section 5904 of the Code, and it was not made to appear that the intervening defendants were ignorant of the defect in service prior to the trial. *Wood* v. *McGuire*, 21 *Ga.* 576 (3), 582.

■ As counsel for plaintiffs in error deal with questions 1 and 3

together, we shall likewise consider them together. Under some circumstances and in certain instances where virtual adoption and not adoption at law is relied upon, the equity in such a case would rest on the fact that the person claiming to have been adopted has performed services of value, and therefore it would be a fraud not to carry out that which was contemplated but which was not completed with requisite legal formality. There may be an equally as large class of instances or cases such as the case at bar, where the agreement to adopt does not rest at all upon the performance of any services by the infant. In a case such as the one at bar Sallie Wayman, being childless, offered to adopt and treat as her own children the two little daughters of a helpless and diseased father who was within close proximity to his subsequent speedy death. We hold that if the uncontradicted testimony in this case be true, as it must legally be assumed to be under the finding of the jury, the contract of adoption did not impose upon the children any obligation of fulfilling any duty or of performing any service other than those filial duties which inhere when the relationship is actually that of mother and child. When Durden gave his children to Sallie Cobb he absolutely surrendered all possession and control, and remitted them to her sole custody. Shortly afterwards he died. Under the testimony they were virtually adopted by Sallie Wayman, or Cobb. But until their majority neither of these children could contract, and neither could at law be compelled to perform any agreement they might have undertaken. In delivering them to Sallie Wayman, Jim Durden substituted her for himself as to parental control of their actions. During their minority failure of these children to perform their filial duties would not abrogate the contract or destroy the relationship created thereby, any more than one's son would cease to be his child because he did not perform his duties as an affectionate and obedient child. If a child, "then an heir," regardless of the conduct of the heir. Even a prodigal son is entitled to his inheritance, and can not be deprived of it by law, however dissolute he may be, except by a will diminishing his aliquot share falling to him under the laws of inheritance. Nothing held in *Crawford* v. *Wilson,* 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.) 773), or *Pair* v. *Pair,* 147 *Ga.* 754 (95 S. E. 295), is in conflict with what we have just stated. So we are of the opinion that the court did not err in instructing the

jury in effect that the petitioners were not required to show more than partial performance on their part during their minority, and that it would be sufficient to entitle them to recover that they show performance by their father whereby he remitted them to the absolute parental control and authority of the deceased, Sallie Wayman. These children could not abandon their father's contract, as insisted, for their minority precluded any participation on their part in the making of the contract, nor could they make a contract. If they misbehaved or sought to abandon Sallie Wayman, she had as ample power to assert her rights to their custody and punish them for their disobedience as their father would have had, or as if she had been their actual mother. Question 3, quoted above, is answered by what we have said with relation to question 1.

■ In the second special ground of the motion for a new trial the movants complain that the court, after stating the contentions of the parties, and with reference to the answer of the administrator, gave in charge the following: " . . the legal effect, being the same as a denial by the administrator, is, as applied to both parties defendant, to put the burden of proof upon the plaintiffs, the parties suing in this case, to show by clear and convincing proof, to the satisfaction of the jury and by a legal preponderance of evidence, that the allegations of the petition, or the allegations that plaintiffs make in their petition are true. And unless the plaintiffs have carried that burden, a verdict for the plaintiffs in this case would not be authorized. By a preponderance of the evidence is meant the greater weight of evidence on the issues involved, which, while that may not be sufficient to wholly free the mind of the juror from a reasonable doubt, is yet sufficient to incline a reasonable and an impartial mind to one side of the issue rather than to the other. You will see that by a preponderance of the evidence is meant the greater weight of the evidence, and not necessarily the greater number of witnesses, though the number of witnesses may be considered by the jury in determining where the greater weight or preponderance of the evidence lies on any issue involved." Error is assigned upon this charge, upon three grounds: " (a) Because it failed to state the proper degree of proof required of plaintiffs as to the material allegations of these petitioners, and relieves them of a part of the burden imposed on them by law. (b) Because, in a case seeking specific performance of an *oral* contract of a deceased

person, proof so convincing as to leave no room for doubt in the mind of the juror is required, and it is error to give in charge the rule of legal preponderance. The rule of preponderance, while properly stated by the court, movants contend, does not apply in this case. (c) The court further, in connection with the charge on the degree of proof required of plaintiffs, charged the jury as follows: 'The law provides that if the plaintiffs shall prevail, the plaintiffs must sustain by clear and convincing proof the truth of the material allegations of their petition by a legal preponderance of the evidence.'" It is further contended that movants "were entitled to impose on plaintiffs the burden of convincing the jury beyond room for any doubt." The degree of proof required to establish a parol contract of virtual adoption as contradistinguished from adoption by law is stated to be "strong, clear, and satisfactory," in *Pair* v. *Pair,* supra, *Bird* v. *Trapnell,* 149 *Ga.* 767, 770 (102 S. E. 131), and *Copelan* v. *Montfort,* 153 *Ga.* 558, 569 (113 S. E. 514). In *Lansdell* v. *Lansdell,* 144 *Ga.* 571, 572 (87 S. E. 782), it is said that the contract "should be clearly made out." The instructions complained of were in substantial accord with the rules above stated; and we are of the opinion that the court did not err in the instructions given, for any of the reasons assigned. Moreover, the testimony as to the making of the contract was undisputed and uncontradicted, and, as we have shown in a previous division of this opinion, virtually created the relationship of mother and child between Sallie Wayman, or Cobb, and each of the two plaintiffs. For that reason the evidence in regard to the failure of the plaintiffs to perform their filial duties was immaterial, and the plaintiffs in error would not have been benefited even if the court had instructed the jury that the contract must be proved to the satisfaction of the jury and beyond any reasonable doubt.

■ The court did not err in overruling the motion for a new trial.

*Judgment on main bill of exceptions affirmed; cross-bill of exceptions dismissed. All the Justices concur.*