SALMON *v.* McCRARY, administrator.

No. 14763.   February 10, 1944.

284

*James Maddox,* for plaintiff in error.   *Alec Harris,* contra.

DUCKWORTH, Justice.   While counsel for the. defendant in error argues that the evidence is substantially the same as that on the last trial of the case, the issue is not to be determined by such a consideration, but by deciding whether or not there was evidence which would support the contract as finally alleged, and whether or not the jury would be authorized to find that there was full performance by the claimant and her husband and a breach on the part of Mrs. Grace.

"Contracts under which one of the contracting parties agrees with the other, for a valuable consideration, that he will make a will giving to the other property, either real or personal, have been sustained and enforced in America from the earliest times, and the validity of such contracts seems now to be beyond all doubt. . . Where a party in whose favor the will is to be made has performed his part of the contract and the other party dies without making the will, or leaves a will in which there is no provision which can be construed as a compliance with the agreement, or leaves a will which in its terms complies with the contract but which is invalid for some reason, the disappointed party may apply to a court of equity for a specific performance of the contract, if it was one of such a nature that a court of equity could require specific performance." *Banks* v. *Howard,* 117 *Ga.* 94, 96 (43 S. E. 438), and cit.   While an oral contract to devise lands

falls within the statute of frauds, nevertheless where the party in whose favor the will is to be made has performed his part of the contract, and the other party dies without performing, the disappointed party may seek specific performance of the contract in a court of equity if it is one of such a nature as to justify the court in granting that relief. *Gordon* v. *Spellman,* 145 *Ga.* 682 (89 S. E. 749, Ann. Cas. 1918A, 852). As far back as *Printup* v. *Mitchell,* 17 *Ga.* 558 (16) (63 Am. D. 258), however, it was ruled that, "A parol contract for land, like the reformation of a deed by parol proof, should be made out so clearly, strongly, and satisfactorily as to leave no reasonable doubt as to the agreement." In the opinion it was said: "It is a serious matter to substitute a parol sale of real estate for a deed." This rule has not been relaxed, but has been inflexibly applied in many decisions of this court in reviewing cases where specific performance of an alleged parol contract was sought to be enforced. See, among others, *Dwight* v. *Jones,* 115 *Ga.* 744 (42 S. E. 48); *Redman* v. *Mays,* 129 *Ga.* 435 (59 S. E. 212); *Gordon* v. *Spellman,* 148 *Ga.* 394 (2) (96 S. E. 1006); *Lloyd* v. *Redford,* 148 *Ga.* 575 (97 S. E. 523); *Allen* v. *Allen,* 151 *Ga.* 278 (5) (106 S. E. 81); *Hattaway* v. *Dickens,* 163 *Ga.* 755 (137 S. E. 57); *Ellis* v. *Reagan,* 172 *Ga.* 181 (157 S. E. 478); *Wall* v. *Wood,* 174 *Ga.* 508 (163 S. E. 153); *Pattillo* v. *Mangum,* 176 *Ga.* 51 (166 S. E. 641); *Brogdon* v. *Hogan,* 191 *Ga.* 647, 654 (13 S. E. 2d, 666). Proving the alleged contract by a preponderance of the evidence is not sufficient to satisfy the rigid test. It must be proved beyond a reasonable doubt, a burden quite as onerous as that imposed in criminal cases. *Scott* v. *Williams,* 167 *Ga.* 386 (145 S. E. 651); *McDermott* v. *Lankenau,* 170 *Ga.* 585 (154 S. E. 149). While the rule may be said to be a strict or harsh one, it is rightly so. Let it be remembered that one who seeks specific performance of an alleged oral contract as against the estate of a decedent is, in effect, asking that property which would otherwise descend by inheritance, as fixed by the law, or by will as determined by the owner, be decreed to be in him. The law quite properly favors the disposition of property through the channels it has prescribed, and requires strict proof to divert it from those channels. When one dies, and is thus no longer able to manage his own estate, the law undertakes to stand as guardian for it and to see that it is

legally disposed of, either to his heirs at law or to his legatees under a will as the case requires. In such confidence we live and die, protected in the safeguards established by the law. In *Lansdale* v. *Lansdale,* 144 *Ga.* 571, 573 (87 S. E. 782), this court quoted approvingly from a Pennsylvania case as follows: "Claims of this nature against dead men's estates, resting entirely in parol, based largely upon loose declarations, presented generally years after the services in question were rendered, and when the lips of the party principally interested are closed in death, require the closest and most careful scrutiny to prevent injustice being done. We can not too often repeat the cautions we have so frequently uttered upon this subject, and we feel that the present occasion is one which demands both their repetition and their application." In *Russell* v. *Switzer,* 63 *Ga.* 711, 725, in referring to certain cases from other jurisdictions which dealt with the requisites of general law concerning the fact of contract and the fulness and certainty of the evidence by which it is sought to be established, this court, speaking through Judge Bleckley, said: "They inculcate a wholesome caution against building up imaginary contracts out of the expression of generous intentions towards persons who, having rendered service, prefer claims for compensation after those whom they served have been removed by death. And the caution is doubly necessary where the claim presented is not merely for just compensation on the basis of a *quantum meruit,* or to some specific article or articles of property, but goes to the entire estate, real and personal, which the decedent left behind him. Nor is it the less necessary because the heirs at law, if any there be, are remote rather than proximate kindred, or because they are foreigners."

For the application of the principles above stated, we have set forth in the statement of facts enough of the evidence on which to predicate the ruling which we now make, to wit, that the court did not err in granting a nonsuit, for the reason that the evidence was not sufficient to establish the alleged contract with the degree of certainty required by law. While counsel for the plaintiff in error argue that the testimony of the husband of the claimant definitely established the contract, shows full performance, and a breach by Mrs. Grace, it will be noted that it is in fact not entirely consistent. The witness stated, it is true, in one part of

his testimony that the contract was that all of the property of Mrs. Grace was to be willed to his wife, Mrs. Salmon, but elsewhere he stated that "we were to look after them and see that they were looked after as long as they lived, and then *we were* to have this property, both real and personal, at their death" [Italics ours], a disposition entirely at variance with the allegation of the petition that "the deceased was to execute a will giving to petitioner all of her property." Even if this glaring discrepancy could reasonably be reconciled by a liberal interpretation, instead of a strict construction, as meaning merely that Salmon and his wife were, as husband and wife living together, to become *possessed* of the property, with title in the wife, we are confronted with the testimony of two other witnesses introduced by the claimant, which forbids any reasonable conclusion that the evidence established the alleged contract "so clearly, strongly and satisfactorily as to leave no reasonable doubt as to the agreement." Mrs. Ivena Holsomback testified that Mrs. Grace said to her that "she had already given what she had to Bessie and Fred [the claimant and her husband] because they had been so nice to look after her. . . I saw some diamond rings she had. I tried them on. She said she had given Bessie the largest stone and Mrs. Henderson the second one, and I don't know about the third one." Disposing of the property by gift during her lifetime to Mr. and Mrs. Salmon "because they had been so nice to look after her," does not comport with the theory that Mrs. Grace was to *execute a will* and leave her property to *Mrs. Salmon*. Giving to Mrs. Henderson the second largest of three diamond rings does not lend countenance to the claim that *all* the personal property, as well as the realty, was to be willed to Mrs. Salmon. Testimony of Mrs. Dan Stevens, that Mrs. Grace told her "that when she left here, she wanted *Mr. and Mrs. Salmon* to have what she had. She did say something to me about a contract or some agreement she had with them," does not tend to establish the parol contract as pleaded by Mrs. Salmon, that all the property was to be willed to her, but raises a serious and reasonable doubt as to such a provision.

The claimant comes into court with the burden of proving the alleged contract with such definiteness as meets the stern requirements of the law, hereinbefore pointed out. Any inconsistencies in testimony offered by her must be resolved against her. The evi-

dence did not establish the alleged contract so as to entitle the claimant to specific performance, and the court did not err in granting a nonsuit.

No ruling is made in what is said above as too whether or not the pleadings were sufficient to justify a decree by a court of equity of specific performance of the alleged contract, no such question being presented by an assignment of error on the grant of a nonsuit. See *Clark* v. *Bandy,* 196 *Ga.* 546 (27 S. E. 2d, 17).

*Judgment affirmed. All the Justices concur.*