1. "Where an administrator advertises that it is his intention to apply for leave to sell any real estate as the property of his intestate, and an affidavit is filed under the provisions of § 4630 [§ 113-]801] of the Civil Code before the order is passed granting leave to sell, and the claim affidavit so filed is duly transmitted to the superior court of the county where the property is situated, that court has jurisdiction, under the issue made up as prescribed in the Code section last referred to to try the right of property, and the issue submitted on the trial should not be so restricted as to determine the single question as to whether the property is held adversely to the administrator, but, under the issue made up under the circumstances stated above, the right of the administrator to have an order granting leave to sell and the necessity for such an order should be determined, as well as whether the property is held adversely to the administrator." Hull v. Watkins, 134 Ga. 779 (68 S.E. 506).
2. The case on its merits, under the evidence, is controlled in principle by the ruling of this court in Salmon v. McCrary, 197 Ga. 281 (29 S.E.2d 58), and the cases there cited. In this equitable action for specific performance of an alleged parol agreement, by a person now deceased, to convey realty, the contract was not established with any degree of clear, definite, and reasonable certainty. Especially did the evidence fail to conform in strength to that required in order to set up and enforce alleged agreements of this particular character.
 No. 15215. SEPTEMBER 7, 1945.
Mrs. R. M. Haynes, as administratrix of the estate of her brother, Leonard B. Burruss, filed in the court of ordinary of Lumpkin County an application for an order authorizing the sale of a certain tract of land in said county as the property of L. B. *Page 703 
Burruss. Before the time set for the hearing on this application, Mr. and Mrs. J. B. Ellis filed in said court of ordinary a claim to said property, asserting therein that it was owned by them. To this claim the administratrix filed a traverse and plea. The case was transferred to the superior court of that county. On the day of the trial in the latter court, Mr. and Mrs. Ellis filed an equitable amendment to their claim, in which they asserted that on December 1, 1939, Burruss told them that, if they would let him live and make his home with them and would move with him to Lumpkin County and take care of him as long as he lived, he would convey to them the real property here in question, and that they accepted this oral contract and carried it out in full. This amendment was sworn to by Mr. and Mr. Ellis, the claimants. The evidence showed that a deed to the tract of about half an acre was made to Leonard B. Burruss on October 4, 1940, and there was no evidence of a written transfer of title to the claimants. A four-room residence was built on the lot, the claimant J. B. Ellis helping to build it, and a part of this house was used as a storehouse. There was some evidence that some of the bills for the material used in its construction were paid by Burruss, and also some evidence that other such bills were paid by J. B. Ellis. When testifying in the case, Ellis said that he had no property of his own when living in Hall County on the place owned by Burruss's mother, except some plow tools, a mule, and a cow; that Burruss was in bed less than a week before he died, and was driving his automobile up until a week before he died. There was some evidence that Burruss and Ellis jointly owned another and different piece of realty called the store property, half and half, and that, when this store property was sold by the administratrix, she took the word of the claimants that they owned half of it and sold only half of it. On cross-examination, Ellis testified: "When Mrs. Haynes made application for administration on his estate, I filed no objections to her being administratrix on the estate. We were figuring on filing with her a claim for some amount to pay for our services in waiting on him. I employed a lawyer to fix up our claim to file with Mrs. Haynes as administratrix of the estate for some amount of money to pay for our services in waiting on him. The lawyer did not tell me that the claim would have to be tried in Hall County down there where Mrs. Haynes lived. . . I *Page 704 
employed a lawyer to file a claim just as [to] the house. I did not employ the lawyer to file — prepare my claim to file — with Mrs. Haynes as administratrix of the estate, for some amount of money for waiting on him, just for the house. If I stated that I employed the lawyer to file a claim with Mrs. Haynes for some amount of money for my services in waiting on him, I didn't understand it." Ellis further testified that, when the administratrix was selling the personal effects and store goods belonging to Burruss, he told Mrs. Haynes that he and his wife claimed the residence property. Mrs. Haynes testified that on two or more visits, when she was getting ready to take away her brother's personal effects or sell them, neither Ellis nor his wife made any claim to those things, and made no claim to the real property. On her second visit, they claimed a half interest in the other and different store property. "Mrs. Ellis at that time did not claim the land or house or anything. She mentioned something about that I ought to pay them something for taking care of him." Several witnesses testified for the petitioners that they knew that Mr. Burruss was very friendly with J. B. Ellis and his wife; that they all occupied the new residence on the lot in question, and that Burruss told them that all he had he was going to give to Mr. and Mrs. Ellis; when advised by one or more of them to make a deed to them, he remarked that he was going to play along with Haynes and his wife until Haynes paid him what he owned him — said by one witness to have been something like $400 — and then he would give it to Ellis and his wife. One or more witnesses testified to remarks made by Burruss to the effect that members of his family had turned against him, and that he was going to leave everything he had to Ellis and his wife. The jury returned a verdict in favor of the claimants, whereupon the judge ordered Mrs. Haynes as administratrix to specifically perform the oral contract referred to in the pleadings, and shown by the evidence in the case, and to convey said real property in fee simple to the claimants, adjudging that the same was not the property of the estate of Burruss, and further ordered the administratrix to pay the costs in the case. Mrs. Haynes, as administratrix, made a motion for new trial which was overruled, and she excepted, assigning error thereon as being contrary to law and contrary to the evidence.
1. In order to establish and enforce by an equitable action for specific performance an alleged oral agreement to convey real property, left unconveyed by a decedent, both the agreement and full performance of its terms on the part of the petitioner must be clearly established with all reasonable certainty, by strong and satisfactory evidence. This case is controlled in principle by the recent case of Salmon v. McCrary, 197 Ga. 281 (supra), and the cases there cited. Here, while the petitioner testified that decedent agreed on December 1, 1939 that if petitioner and her husband (who were tenants of decedent) would move with him to Lumpkin County and take care of him as long as he lived, he would convey to petitioners the house and lot here involved, and though the husband testified that they had fully performed their part of the agreement, the evidence is undisputed that the deceased did not in fact purchase the one-half acre lot in question on which a small house was later built, until October 4, 1940; that is about ten months subsequent to the alleged agreement to convey. Moreover, the evidence of plaintiff's husband, by whom the contract was sought to be established, was to the effect (although later withdrawn) that "we" (witness and his wife, the plaintiff) "were figuring on filing with her (the administratrix) a claim for some amount to pay for our services in waiting on him. I employed a lawyer to fix up our claim to file with Mrs. Haynes as administratrix of the estate for some amount of money to pay for our services in waiting on him." Although petitioner introduced several witnesses who testified in effect to the good treatment bestowed by them on decedent, and as to declarations by the decedent that the expected to will all of his property to them, this did not sustain, but did in fact contradict, the terms of the alleged contract to deed the specific house and lot involved; and there was evidence for the administratrix which tended to show that the petitioner did not at first make any claim for the house and lot under any alleged contract, but claimed the right to be paid compensation for services. We do not think that taking the evidence for the petitioner alone, it established the contract with any sort of certainty; certainly not with that degree of satisfactory proof sufficient to meet the requirements of law recognized and required under numerous previous decisions of this court. *Page 706 
 Judgment reversed. All the Justices concur, except Candler,J., disqualified.