WARE, administrator, *v.* MARTIN.

No. 17779.   SUBMITTED FEBRUARY 12, 1952—DECIDED APRIL 16, 1952.

*L. C. Groves, Colley & Orr* and *Clement E. Sutton,* for plaintiff in error.

*Earle Norman,* contra.

HEAD, Justice. ■ This court having ruled in *Ware* v. *Martin,* 208 *Ga.* 330 (66 S. E. 2d, 737), that the petition as then amended stated "an equitable cause of action on the basis of the plaintiff being the child of the deceased parties by virtual adoption, and a breach of the agreement to adopt," it was not error to overrule the demurrer to the petition as further amended, since the second amendment did not materially change the allegations of the petition as to the relief sought against the administrator of C. E. Keeter.

■ Where specific performance of an alleged parol contract is sought, it is the general rule that proof of the contract must "be made out so clearly, strongly and satisfactorily, as to leave no reasonable doubt as to the agreement." *Printup* v. *Mitchell,* 17 *Ga.* 558, 559 (63 Am. D. 258); *Shropshire* v. *Brown,* 45 *Ga.* 175; *Beall* v. *Clark,* 71 *Ga.* 818; *Smiley* v. *Smiley,* 144 *Ga.* 546 (87 S. E. 668); *Bird* v. *Trapnell,* 149 *Ga.* 767 (102 S. E. 131); *Pattillo* v. *Mangum,* 176 *Ga.* 51 (166 S. E. 641); *Salmon* v. *McCrary,* 197 *Ga.* 281 (29 S. E. 2d, 58); *Haynes* v. *Ellis,* 199 *Ga.* 702 (35

S. E. 2d, 151) ; *Hulgan* v. *Gledhill,* 207 *Ga.* 349 (61 S. E. 2d, 473).

A petition which alleges a parol contract to adopt, and which seeks to have the child declared to be an heir of the deceased, or which seeks a decree declaring the child to be the child of the alleged adopter, is essentially an action for specific performance (*Pierce* v. *Harrison,* 199 *Ga.* 197, 33 S. E. 2d, 680), and under the decisions of this court the evidence required to prove a parol contract to adopt must be "clear, strong, and satisfactory."

In *Pair* v. *Pair,* 147 *Ga.* 754, 757 (95 S. E. 295), it was held that a parol contract to adopt "will be specifically enforced in equity if the contract be definite and specific, based upon a sufficient legal consideration, and the proof of it be strong, clear, and satisfactory."

In *Ray* v. *Kinchen,* 166 *Ga.* 788 (144 S. E. 317), it was held: "The right of plaintiff to the relief sought is based upon her claim of 'virtual' adoption. An oral contract of adoption must be definite and specific, based upon a sufficient legal consideration, and the proof of such contract must be clear, strong and satisfactory." See also *Lansdell* v. *Lansdell,* 144 *Ga.* 571 (87 S. E. 782); *Rahn* v. *Hamilton,* 144 *Ga.* 644 (87 S. E. 1061); *Ansley* v. *Ansley,* 154 *Ga.* 357 (114 S. E. 182); *Crum* v. *Fendig,* 157 *Ga.* 528 (121 S. E. 825); *Chamblee* v. *Wayman,* 167 *Ga.* 821 (146 S. E. 851); *Savannah Bank & Trust Co.* v. *Wolff,* 191 *Ga.* 111 (11 S. E. 2d, 766); *Jones* v. *O'Neal,* 194 *Ga.* 49 (20 S. E. 2d, 585).

Counsel for the plaintiff cites and relies upon an extract from the third headnote in *Chamblee* v. *Wayman,* supra, as follows: "it is sufficient to establish the contract for it to be shown that the father of the children completely and absolutely surrendered them to the deceased according to the contract." Counsel also quotes from 2 C. J. S. 397, § 26, which cites *Chamblee* v. *Wayman* as authority, as follows: "A complete and absolute surrender of the child to the quasi-adoptive parents may be sufficient to show the contract of adoption."

There is no decision by this court which holds that evidence of the surrender of a child by its parents is sufficient to prove a contract to adopt. Counsel for the plaintiff has construed the word "establish" in the above quotation from *Chamblee* v. *Wayman,* supra, to mean "prove." This construction is not supported

by the opinion of the court or the record in that case. The word "establish" as used in the third headnote relates to performance of the contract. This is true for the reason that in the headnote, and in the corresponding division of the opinion, the writer was dealing with charges and alleged failures to charge by the trial judge on performance of the contract. The trial judge denied the request to charge that the plaintiff would have to show by a preponderance of the testimony that there had been full performance of the contract both on the part of the person contracting for the children and by the children. It would require a very strained construction, and one wholly unauthorized by the opinion, to hold that the writer of the opinion digressed from a consideration of the attacks made on the charges of the court with reference to performance, to revert to a ruling upon a question already settled by the first division of the opinion.

In *Chamblee v. Wayman*, supra, there was a contract proved by uncontradicted testimony, and in *Savannah Bank & Trust Co. v. Wolff*, supra (also cited by counsel for the plaintiff), there was positive proof of the contract to adopt.

In the present case there is no evidence of a contract between Mr. and Mrs. John Keeter and C. E. Keeter. The plaintiff relies upon statements by C. E. Keeter which do not show a contract. Statements by the deceased showing affection for the plaintiff, and a fatherly attitude toward the plaintiff, accompanied by statements by the deceased that the plaintiff was his adopted daughter, considered in their entirety, are wholly insufficient to show that Mr. and Mrs. John Keeter surrendered the plaintiff to C. E. Keeter pursuant to an oral contract between the parties that the parents would relinquish all parental rights, and that the defendant would adopt the plaintiff in the manner provided by law. The verdict of the jury is without evidence to support it, and the trial court erred in overruling the general grounds of the motion for new trial.

3. Special grounds 1 and 2 assign as error an excerpt from the charge of the court. It was contended that the charge was misleading and confusing to the jury, in that they were led to believe that the contract of adoption had been proved if the evidence showed that the father and mother of the plaintiff surrendered her to the deceased; that the words, "according to the contract"

and "in accordance with the contract," amounted to an expression of opinion by the court that a contract was made as contended by the plaintiff; and that, for this reason, the charge was harmful and prejudicial to the defendant.

Prior to the charge complained of, the trial judge charged the jury that the burden of proof was on the plaintiff to establish her contentions by "strong, clear, and satisfactory evidence, and beyond a reasonable doubt." This charge stated the degree of proof required in all cases where the cause of action is based on a claim of "virtual" adoption pursuant to an oral contract to adopt. See *Ray* v. *Kinchen,* supra; *Ansley* v. *Ansley,* supra.

The charge assigned as error is in substance the same as the language in the third headnote of the decision of this court in *Chamblee* v. *Wayman,* supra. It has been held by this court that it is not always proper to give in charge to a trial jury language appearing in decisions of this court. Since this court in headnote 3 of *Chamblee* v. *Wayman,* supra, was dealing with the question of performance of the contract, it would have been clearer to the jury in the present case, with reference to performance of the contract, had the trial judge charged: "It is sufficient to show performance of the contract by the father of the child for it to be shown that he completely and absolutely surrendered her to the deceased according to the contract." The trial judge in this case did not intimate an opinion as to what had been proved as to a contract.

■ Ground 3 of the amended motion for new trial assigns as error a ruling by the court as to the qualification of certain jurors. No ruling is required upon this ground, since the alleged error should not recur upon a retrial of the cause.

For the reasons set forth in division 2 of this opinion, the judgment of the court denying the general grounds of the motion for new trial must be reversed.

*Judgment reversed. All the Justices concur, except Atkinson, P.J., Wyatt and Candler, JJ., who dissent.*

ATKINSON, Presiding Justice, dissenting. There can be no rights under a claim based on virtual adoption of a child unless there has been a breach of a valid contract to adopt, and the contract to adopt must be established by clear and convincing proof so as to leave no reasonable doubt as to its existence. But

to establish such a contract it is not essential that the phraseology of the verbal agreement between the parties be established by direct evidence. Proof of a contract is required in order to prevent fraud. But to require proof of the phraseology of the verbal agreement would be a harsh rule, and would in many cases deprive the child of its rights. There is no rule of law requiring such strict proof to establish a contract. The general rules of evidence apply to actions on contracts; and, where the question at issue is the existence or non-existence of a contract, this is a question of fact for the jury. A contract to adopt may be established by the acts, conduct, and statements of the parties. See 2 C. J. S. 396, § 26 (a); Kay v. Niehaus, 298 Mo. 201 (249 S. W. 625); Roberts v. Roberts (Mo.), 223 Fed. 775; Bland v. Buoy, 335 Mo. 967 (74 S. W. 2d, 612); Roberts v. Sutton, 317 Mich. 458 (27 N. W. 2d, 54); Evans v. Kelly, 104 Neb. 712 (178 N. W. 630); Anderson v. Anderson, 75 Kan. 117 (88 Pac. 743, 9 L. R. A. (NS) 229); Edson v. Parsons, 155 N. Y. 555 (50 N. E. 265).

Acts of the adopting parents may illustrate the agreement more surely than witnesses who attempt to repeat the substance of conversations which they listened to many years before. 1 Am. Jur. 634, § 29.

In the instant case, there was a complete and absolute surrender of the infant child by her father (her mother being dead), which took place many years prior to the present issue, and the parties to the agreement are dead. The acts, conduct, admissions, and declarations of the parties, when considered along with the facts and circumstances as disclosed by the evidence, were sufficient to authorize the jury to conclude that beyond a reasonable doubt there was a contract to adopt. The evidence has every element essential to establish a fact by the law of circumstantial evidence.

WYATT, Justice, dissenting. I can not agree with the ruling of the majority opinion to the effect that the evidence in this case does not authorize the verdict. The rule to the effect that a parol obligation of a person to adopt the child of another as his own, accompanied by a virtual though not a statutory adoption, and acted upon by all parties concerned for many years and during the obligor's life, may be enforced in equity upon the death of

the obligor by decreeing the child entitled as a child to the property of the obligor undisposed of by will, is so well settled in this State that the citation of authority is unnecessary. The question here presented is whether or not the evidence was sufficient to show a contract to adopt.

The evidence on this question may be summarized as follows: "I knew Mr. Charles E. Keeter during his lifetime. . . I have heard Mr. Keeter speak of his two daughters. . . I didn't know then he had an adopted daughter. . . He would speak of them and say they were more dear to him than anything on earth. . . He didn't show any difference between them. . . If he bought one something, he also bought the same for the other."

Alex Glidell testified in part as follows: "I knew Mr. Charles E. Keeter during his lifetime . . I have worked for him. ' . . I remember a conversation I had with Mr. Keeter in reference to his wife and children. . . He said to me. . . I want you to look for another job. I am fixing to quit work, for I have enough for me and my wife and two daughters. . .' He just said the parents of Mrs. Martin gave him the kid on the mother's deathbed, and he was going to keep it like it was."

A witness testified that, shortly before the death of Mr. Keeter, he said to the witness: "While he didn't have any boys, he did have two girls and said he had adopted one of the girls . .. said he thought as much of one of his daughters as he did of the other and treated them exactly the same; that when he gave one anything, he gave the other . . said the child was given to him when she was about two years old . . that his wife and children were all that he was living for, and he was saving his property for them."

Several witnesses testified that Mr. Keeter spoke of the girl as his daughter and that he adopted her. It appeared that he shed tears when she ran away and married against his wishes; that he would introduce her husband as his son-in-law. Generally it appeared from the evidence that the relationship between Mr. Keeter and this girl was that of father and daughter, he performing all the duties of a father, and she all the duties of a daughter.

The precise question presented is whether or not this evidence

is sufficient to support a verdict finding that there was a contract to adopt, two juries having so found. "A person seeking to share in the estate of another, by virtue of deceased's contract to adopt claimant, must establish the contract to adopt by clear and convincing proof. If the alleged contract is oral, or alleged to have been lost, the proof of it must be so clear, cogent, and convincing as to leave no reasonable doubt as to its existence and terms, and the proof must show not only that a contract existed, but that the particular contract alleged existed. Under this rule relief should be cautiously granted, and each case must rest on its own facts. This rule, however, does not prevent the establishment of a parol agreement to adopt by the acts, admissions, and conduct of the parties and inferences therefrom, as it may be, although there is no direct proof of the agreement or contract. In determining whether or not the proof adduced satisfies the proof required, the surroundings of the alleged adoptive parent must be taken into account as well as the motive which actuated him in entering into a contract of adoption. A complete and absolute surrender of the child to the quasi-adoptive parents may be sufficient to show the contract of adoption." 2 C. J. S. 396, § 26.

"In an equitable suit brought against an administrator whose intestate was alleged to have made an oral contract with the father of two small children, agreeing to take the children, adopt them as her own, and rear and educate them, and make them her heirs, in which it was prayed that the administrator be required to specifically perform the contract, it is sufficient to establish the contract for it to be shown that the father of the children completely and absolutely surrendered them to the deceased according to the contract." *Chamblee* v. *Wayman*, 167 *Ga.* 821 (3) (146 S. E. 851).

In *Toler* v. *Goodin*, 200 *Ga.* 527, 540 (37 S. E. 2d, 609), when dealing with the question of whether or not the proof of the agreement to adopt must use the word "adopt", this court said: "Witnesses are not expected to be as definite and precise as a pleader must be, and there is authority to the effect that an oral agreement to adopt may be shown by the acts, conduct, and admissions of the parties, and that in order to establish such a contract, the exact word 'adopt' need not be used. See in this

connection, 2 C. J. S. 396, § 26; Remmers *v.* Remmers (Mo.) 239 S. W. 509; Taylor *v.* Coberly, 327 Mo. 940 (38 S. W. 2d, 1055); Lynn *v.* Hockaday, 162 Mo. 111 (61 S. W. 885, 85 Am. St. R. 480); Parks *v.* Burney, 103 Neb. 572 (173 N. W. 478); Lamb *v.* Feeham (Mo.) 276 S. W. 71.

"In the instant case, the proof did not depend entirely upon the testimony of the witness Bryan. There was, as we have indicated, much additional evidence, relating to statements of the Tolers, the conduct and apparent relations as between them and the child, and other circumstances corroborating his testimony, and pointing toward the conclusion that there was an agreement to adopt. Considering the evidence as a whole, we think that the jury were authorized to find that there was such a contract. Nor, in so holding, do we overlook the rule that in such a case the alleged agreement must be proved so clearly, strongly, and satisfactorily as to leave no reasonable doubt in the minds of the jury."

While in the instant case the evidence does not disclose that the word "adopt" was used in the conversation between the alleged adopting party and the natural parent of the child, it does disclose that the adopting father intended to adopt the child; that the child was the child of his brother; and that the relationship between the child and the alleged adopting party was in every particular that of father and child, and that this child was treated as a child, even to the extent of receiving the same treatment and consideration that the father accorded his natural daughter, and that this treatment and relationship continued from the time the child was about two years old until she married, and thereafter she and her husband were treated in every respect as daughter and son-in-law. There was ample evidence for the jury to find that the alleged adopting father intended that the girl should participate in his estate just as did his natural daughter. In view of the authorities above cited, the jury was authorized to find that there was a contract to adopt, although the word "adopt" was not shown to have been used. The circumstances of this case should not be measured by the same rule as a case where a stranger attempts to set up parol agreements by virtue of which it is sought to participate in the estate of a deceased person.

38

It appears to me that *Chamblee* v. *Wayman,* supra, is absolutely controlling in this case, and I do not believe that the ruling there made is not sound, or that this court has the right to simply walk over this full-bench decision. It is likewise true that the ruling made in *Chamblee* v. *Wayman,* supra, is in accord with what has been held in just about every other jurisdiction in the United States. See 2 C. J. S. 396, § 26.

I am fully aware that the evidence in this case is circumstantial, but circumstantial evidence when sufficiently strong is recognized by the courts of Georgia to the extent of taking the life and liberty of its citizens. I am unwilling to place property rights on a higher plane of protection than the life and liberty of the citizens of this State.

It is also true that the child alleged to have been adopted in this case was the child of the brother of the deceased and one that he would want to provide for under any circumstances. It is, however, just as true that this very fact is one of the strongest circumstances indicating that he would want to adopt the child and that his brother would want him to adopt the child and make her in every respect a member of his family. I think the evidence in this case discloses beyond any shadow of doubt that these two brothers did just what should have been done.

It seems to me that the majority opinion follows a few isolated dissenting opinions in cases decided by this court. I am authorized to state that Mr. Justice Candler joins in this dissent.