1. A party seeking specific performance of a contract must show substantial compliance with his part of the agreement; otherwise he is not entitled to a decree. In this case the plaintiffs alleged that they were ready, willing, and able to comply with their obligations under the contract; and the evidence having shown a breach of a material condition thereof, the plaintiffs did not prove their case as laid, and a nonsuit was properly awarded.
2. Where in such case the main defendant filed a cross-action seeking recovery against two of the plaintiffs on a promissory note, the parties thus sued did not show a good defense merely by pleading and proving that the defendant as holder of the note had agreed to accept therefor such an amount as might be determined by designated persons to be fair and proper, after the value of a named estate should be determined. Even if such agreement by the holder was sufficiently definite and otherwise binding, still, in order to use it as a defense, it would have been incumbent on the plaintiffs to go further and show that in pursuance thereof the persons designated for that purpose had actually determined the amount that should be paid.
3. There being no pleading or evidence showing such determination, and *Page 729 
no other defense to the cross-action having been pleaded, the court properly directed the verdict for the amount of the note sued on.
 Nos. 13550, 13551. MARCH 15, 1941.
John J. Lee and W. D. Lynn as administrators of R. A. Lee, deceased, and John J. Lee and others as individuals, filed a suit against Georgia A. Lee and two others, for specific performance of a contract signed by John J. Lee and Georgia A. Lee only. The petition alleged that the individual plaintiffs and the three defendants were all of the heirs at law of R. A. Lee, deceased, and that the two who were named as defendants along with Georgia A. Lee were thus made parties in order to have all parties at interest before the court, these two having declined to join in the suit as parties plaintiff. The lands in controversy had been conveyed to Georgia A. Lee by her father R. A. Lee some time before his death, and after his death suit had been instituted by a creditor, Turpentine Rosin Factors Inc., to cancel the deeds of conveyance to her as being fraudulent, and to foreclose various security deeds made to such creditor by the said R. A. Lee. In that suit an injunction was issued against Georgia A. Lee, and a receiver was appointed. The petition in the present case alleged substantially what has just been stated, and the following: Shortly after the filing of that suit the heirs at law of R. A. Lee held a family conference, and in order to prevent a sacrifice sale of practically all of their father's estate it was agreed that they would all "co-operate with each other for their mutual good." As a part of the whole agreement and understanding between all of the heirs, Georgia A. Lee and John J. Lee entered into a written agreement for the benefit of themselves and all of the heirs of the said R. A. Lee. In substance it was provided in said agreement that Georgia A. Lee would convey the three tracts of land described in the agreement to the heirs of R. A. Lee, so that the same might be equally divided in the division of the assets of the estate, and that John J. Lee and Georgia A. Lee would scale down their claims against the estate of their father, which claims were evidenced by promissory notes held and owned by them and particularly referred to and described in the agreement, a copy of which is as follows:
"The undersigned Georgia Lee, an heir at law of R. A. Lee, *Page 730 
late of Ware County, Georgia, deceased, holds deeds of conveyance made, executed, and delivered to her by the said R. A. Lee during his lifetime, to the following described two tracts of land located in Ware County, Georgia [describing three tracts of land]. There is now pending in the District Court of the United States for the Southern District of Georgia a suit in equity against the undersigned, Georgia Lee, and others who are heirs of the said R. A. Lee, brought by Turpentine Rosin Factors Inc., to foreclose deeds to secure debt, for account, for injunction and receivership. In this suit, it is alleged that the undersigned, Georgia Lee, is holding the above-described three tracts of land in fraud of creditors of the said R. A. Lee, and the complainant prays for cancellation of these conveyances. The undersigned, Georgia Lee, has mutually agreed with the other heirs of her said father, R. A. Lee, that upon termination of the aforesaid suit she will divide the above-described tracts of land in kind among all of the heirs of R. A. Lee, or will convey said property to them, so that she and all the living children shall have an equal share in said lands and the children of a deceased brother shall have together a child's part therein. . .
"The undersigned, Georgia Lee, is the owner of a certain promissory note dated May 16, 1931, in the principal amount of $789.86, payable to her and executed by R. A. Lee. This note constitutes a claim against said estate. She has, however, in consideration of the mutual interest of the heirs of the said R. A. Lee, agreed to accept out of said estate in full settlement of said claim such amount as a majority of the adult heirs of her said father shall determine is fair and proper for her to accept after it is determined what amount of money and property will be available, if any, for distribution among the heirs of her said father.
"The undersigned John J. Lee has a claim against the estate of his father, R. A. Lee, in the principal amount of $500, evidenced by a promissory note payable to the undersigned John J. Lee and executed by R. A. Lee. The undersigned John J. Lee, in consideration of the mutual benefits accruing to the several heirs of said estate, in amicable adjustment of the affairs of said estate, has agreed with the other heirs of said estate to accept in full settlement and satisfaction of said promissory note such amount as a majority of the adult heirs of the said father's estate *Page 731 
think he is entitled to after it is determined what is the value in money and property of said estate.
"Each of the undersigned mutually agrees between themselves and with the other heirs of their father, R. A. Lee, to do and perform the covenants of this agreement after the termination and conclusion of the above-mentioned suit now pending in the United States Court, or as soon as they are permitted to do so by any modification of the restraining order granted in said case.
"In witness whereof, the undersigned have hereunto set their hands and affixed their seals, on this the 28th day of June, 1937.
(S) Miss Georgia Lee (Seal) (S) J. J. Lee (Seal).
As a result of the activities of petitioners and their attorney, stated in detail in the petition, the claim involved in the creditor's action was finally satisfied in full, more than $5,000 in money and property was left for the benefit of the estate, and the temporary injunction against Georgia A. Lee was dismissed. "As the direct result of the activities of petitioners, acting pursuant to and in compliance with their mutual understanding and agreement with the defendant Georgia Lee, she as a creditor of the estate is now in position to receive a very substantial benefit from the efforts of petitioners. In addition to her benefiting as a creditor, she stands to benefit as an heir of the estate. . . John J. Lee for his part is ready, willing, and able to carry out his covenants contained in the foregoing agreement, and he makes this his continuing offer to comply with and carry out his covenants as a party to said written agreement. The remaining petitioners for their part are ready, willing, and able to comply with all of the terms of the aforementioned agreement, and they make this their continuing offer to comply therewith."
The plaintiffs prayed for "a decree of this court requiring the defendant Georgia Lee to specifically perform and comply with the terms of her written agreement, and that she be caused to make and deliver a proper conveyance of the title to the realty described in said agreement, and that she be caused to faithfully carry out and perform each and every provision of said agreement;" and for general relief.
Georgia A. Lee demurred generally and specially. The demurrers were overruled. She also filed an answer, and a cross-action in which she sought a verdict and judgment against the administrators *Page 732 
for the amount of the note held by her against R. A. Lee, deceased. After the plaintiffs had introduced evidence and rested, the court granted a nonsuit in the action for specific performance. The case then proceeded to trial upon the cross-action. The plaintiff's attorneys requested the court to allow the original petition to be considered as an answer to the cross-action. The court assented as to such parts of the petition as might be relevant for that purpose. The plaintiffs then offered an amendment setting up that the consideration for the contract sued on by them was in part the settlement of a family dispute regarding the lands described therein; the purpose of the amendment being to show that such compromise constituted a sufficient consideration for the agreement of Georgia A. Lee regarding the note, as shown in such written agreement. This amendment was disallowed. After introduction of evidence on the cross-action, the court directed a verdict in favor of Georgia A. Lee, the complainant therein, and against the administrators. The plaintiffs excepted, assigning error on rulings of the court excluding oral and documentary evidence offered by them in the main action, and on the grant of nonsuit therein. They complained also of the disallowance of their amendment, exclusion of testimony in three instances, and direction of the verdict. Georgia A. Lee sued out a cross-bill of exceptions assigning error on the overruling of her demurrers to the petition for specific performance, and to a ruling of the court admitting in evidence a note for $350 principal, signed by R. A. Lee and payable to John J. Lee.
With reference to that note John J. Lee, as a witness for the plaintiffs, testified as follows: "The agreement that Georgia Lee and I signed refers to a note as follows: "The undersigned, John J. Lee, has a claim against the estate of his father, R. A. Lee, in the principal sum of $500, evidenced by a promissory note payable to the undersigned, John J. Lee, and executed by R. A. Lee,' but I do not have any note for the principal amount of $500. That [referring to the note for $350] is the only note father owed me. With reference to the statement in the contract that I held a note for the principal sum of $500, I told Mr. Garrett that the amount was $500, and there was a mistake there when he drew it up. When I read the contract I told Mr. Garrett it was a mistake. I don't know why he did not change it, or why I did not *Page 733 
have him change it before I signed it. As to why I signed a contract that I knew was not the truth, I told Mr. Garrett that the estate owed me as much as $500. I don't remember reading this contract where I saw it stated that the estate owed me a note for $500. Mr. Garrett read it, and I think it is true that I heard him say `500 note,' and I told him it was a mistake. As to why I signed that statement knowing it was not the truth, she signed it and handed it to me, and I signed it. As to whether I sign statements that are not true because somebody hands it to me — I signed that. As to why I did not see that the mistake was taken out before I signed it — they were representing me. I did not say I was willing to sign any statement Mr. Garrett prepared, but I did sign that mistake he prepared. I would not offer to swear that I told Mr. Garrett when we signed the contract that there was a mistake in there. Later, when I heard the contract read or looked at it again I might have said I signed that through a mistake, and I did do it. Mr. Garrett did not read it to me before I signed it. He read it, and it had the amount of $500 in there then. I did not tell him right that minute that it was a mistake. I don't know why I did not. As to whether I knew it was not the truth — there were several in there signing and fixing up the contract, and I would not say what I told him about it. Georgia and I and some witnesses are the only persons who signed the agreement. Georgia and I are the only heirs who signed it. I say now that I don't remember whether or not I told Mr. Garrett there was a mistake in the contract. I heard the contract read, but would not say I caught every word of it. I don't remember whether I caught that about $500 right then or not. I did not tell Mr. Garrett right then that there was a mistake, but I told him some time later. He may have mentioned it to me, but I think I mentioned it to him. It might have been two or three weeks or two or three days later; I can't recollect now. I would have to come up there to see Mr. Garrett every occasionally. I guess Georgia heard it read. After I knew it was a mistake I did not go and tell Georgia that `I have not got a $500 note.' I never told her differently until I came in this courthouse."
It was stipulated on the trial "that a majority of the adult heirs of R. A. Lee had not had a meeting and decided what amount *Page 734 
would be paid to Miss Georgia Lee for her note referred to in the contract sought to be specifically enforced."
1. The preceding statement is not intended to show all the facts contained in the record. In the view which we take of the case, the facts other than those set forth could not change the result, and therefore need not be stated. Part if not the whole consideration appearing in the contract for the promises of the defendant Georgia A. Lee in reference to the lands in question, and as to discounting her note against her father's estate as therein stated, was a stipulation by her brother John J. Lee, the only other signatory party, that he himself had a claim against the estate "in the principal sum of $500 as evidenced by a promissory note" signed by his father, and that he would accept in full settlement thereof "such an amount as a majority of the adult heirs might think him entitled to," as the value of the estate should be determined. The petition alleged in effect that the plaintiffs, including John J. Lee, were ready, willing, and able to comply with this stipulation. The evidence, however, showed that the only note John J. Lee held against the estate was a note for the principal sum of $350. While the estate was in better condition for owing a note in the lesser amount, yet the potential detriment to John J. Lee would have been greater had he held a note for the amount stipulated. The parties had the right to contract on the basis of reciprocal detriment, and the covenant of John J. Lee in that respect appears to have been a material one. A party seeking specific performance of a contract must show substantial compliance with his part of the agreement; otherwise he is not entitled to a decree. Code, § 37-806; Robinson v. Vickers, 160 Ga. 362
(2) (127 S.E. 849); Ledbetter v. Goodroe, 179 Ga. 69 (4) (175 S.E. 250). Even if the evidence would have authorized an inference that the stipulation of John J. Lee as to having a note for the principal sum of $500 was inserted by mistake on his part, and if such mistake could have been relieved in some way, yet there was no effort whatever to make amends by offering any equivalent of what he had promised, or otherwise. Hence, according to the evidence, there was a failure to comply substantially with his part of the agreement as set forth therein. *Page 735 
While the difference in the amount of the note may not be large, the parties themselves determined the consideration, and it is not for the court to make a different contract for them. Nor is the difference so small that it may be disregarded under the maxim de minimis non curat lex; and this is true even though there may have been other considerations not specifically expressed in the writing.
Several assignments of error complain of rulings of the court rejecting evidence offered by the plaintiffs. The evidence excluded would not have cured the defect herein pointed out, and therefore we need not pass upon these assignments.
For the reasons stated, regardless of other questions argued, the judge did not err in awarding a nonsuit. We are not here deciding that the contract was sufficiently definite or otherwise good in law. As against a demurrer, the plaintiffs obtained a ruling that the contract was good, and the sum of what we are now holding is, that, even on that theory, the plaintiffs did not prove their case as laid.
2. Nor was it error to direct the verdict in favor of the complainant in the cross-action. The amendment offered by the plaintiffs did not state any defense, and was properly disallowed. It related only to consideration for the agreement of Georgia A. Lee to "scale" her note by accepting therefor such an amount as a majority of the adult heirs might determine as fair and proper; whereas a recovery on the note could not be defeated by the mere establishment of such agreement. Assuming that the agreement was sufficiently definite and otherwise binding in every respect, still, in order to use it as a defense, it would have been incumbent on the plaintiffs to go further and show that in pursuance thereof a majority of the adult heirs had actually determined the amount that should be accepted. Under the terms of the agreement, there was no duty on Georgia A. Lee to take the initiative for the purpose of bringing about such determination.Finlay v. Ludden Bates Southern Music House, 105 Ga. 264
(31 S.E. 180); Goldberg v. Provident Washington InsuranceCo., 144 Ga. 783 (87 S.E. 1077); Geer v. Grow, 31 Ga. App. 254
(120 S.E. 426).
3. There being no pleading or evidence to the effect that any such determination had been made, and no other defense having *Page 736 
been pleaded, the rejection of certain testimony offered by the plaintiffs on the trial of the cross-action was not erroneous, and the court properly directed the verdict for the amount of the note sued on. Since both the judgments complained of in the main bill of exceptions, one being a nonsuit, must be affirmed, it is unnecessary to determine whether the court erred in overruling the demurrer to the petition for specific performance, as contended in the cross-bill of exceptions. Accordingly that bill of exceptions is dismissed, with direction that such dismissal shall not adjudicate the merits of the demurrer. Macon Auto Co.
v. Heard, 142 Ga. 264 (2) (82 S.E. 658).
Judgment affirmed on the main bill of exceptions. Cross-billdismissed, with direction. All the Justices concur.