PATRICK, administratrix, *v.* HOLLIDAY.

No. 15347.   JANUARY 15, 1946.

*Pauline M. Lamar* and *Foley & Chappell,* for plaintiff in error. *Ed. Wohlwender* and *John G. Cozart,* contra.

ATKINSON, Justice. (After stating the foregoing facts.) ■ Under the general grounds, we will consider only the question of whether or not the evidence supports the allegations as to the realty described in the petition. The real estate which the petitioner alleged Patrick promised to devise was described definitely in the petition; but, in seeking to establish by evidence the real estate in question, the requirements of the law in this respect were not met. There was no sufficient identification, by evidence, of the property alleged to have been contracted to devise. The husband of the petitioner, who was the principal witness, referred to the property in question many times by the use of such phrases as "the store," the "combination rock store and house," the "store and filling station," the "filling station and little dwelling," and a "home." He also testified that Mr. Patrick consulted the petitioner during the building of the "combination store and filling station," and said that he wanted her to "stake this lot off," as it was being built for her. While the witness testified that the "three acres and rock house belonged to Mr. Patrick" during his lifetime, and that at his death it would belong to the petitioner, he did not in any way identify the land referred to as being the "three acres of land, more or less," upon which there was a "rock house and dwelling," and also a "four-room frame dwelling," as set forth in the petition, or testify that the land referred to was the only three acres and rock house that Patrick owned at the intersection of the Gray Rock and Hamilton Roads. From the testimony of the petitioner's husband, it would seem that the realty which Patrick agreed to devise was a combination store and filling

station, without a description of any land upon which it stood. Neither is there anything in his testimony which establishes by the degree of proof required that the four-room dwelling house, or the balance of the three-acre tract described in the petition, was included in the contract. Nor does the testimony of Miss Marie Dixon, B. E. Slaughter, or O. C. Dempsey, make it clear that the tract described in the petition was the realty covered by the alleged agreement. In an action in equity for specific performance of an alleged parol contract to make a will, the agreement must be proved so clearly, strongly, and satisfactorily as to leave no reasonable doubt as to the contract. *Salmon* v. *McCrary,* 197 *Ga.* 281, 285 (29 S. E. 2d, 58), and citations.

█ It is insisted by the defendant in error that any defect in making out a prima facie case as to the description of the realty involved was cured by the following testimony of the petitioner's husband: "Q. Have you read over this petition? A. Yes, sir, a little, not much. Q. Have you read the petition over? A. Yes, sir. Q. Do you know what it contains? A. Yes, sir. Q. State whether or not the allegations of fact therein are true? A. It is true."

The "petition" was not introduced in evidence. While there is nothing to identify the "petition" referred to as being the petition of the plaintiff in the lower court which contained a description of the realty in question—yet, assuming it so to be, this would not be legal testimony to establish the truth of every allegation contained therein. A party's pleadings are not ordinarily evidence in his favor. *Hawkins* v. *Chambliss,* 120 *Ga.* 614 (48 S. E. 169); *Mitchell* v. *Great Atlantic & Pacific Tea Co.,* 7 *Ga. App.* 824 (2) (68 S. E. 343); *Lancaster* v. *Ralston,* 58 *Ga. App.* 404 (198 S. E. 839). The pleadings merely present the issues, and, where denied by the opposing party, must be established by aliunde proof. It would be revolutionary to our system of jurisprudence to permit a plaintiff to establish the allegations of the petition and make out a prima facie case by merely testifying that the contents of the petition are true. The effect of such a ruling would prevent nonsuits, demand directed verdicts, eliminate new trials on grounds of the insufficiency of evidence, and create many other drastic and abhorrent innovations affecting the law of allegata and probata. Many other reasons may be assigned for de-

clining to give any credit to such testimony, but suffice it to say that in a suit of this nature such evidence has no probative value.

It follows that the evidence was insufficient to support the verdict in favor of specific performance of the contract.

■ One special ground of the motion for new trial complains because the court charged: "Gentlemen, if you find, after a full consideration of the evidence and the law as given you in charge, that Mrs. Holliday, the plaintiff, and Mr. J. W. Patrick, during his lifetime, entered into a contract substantially as set forth in . . the petition, and that Mrs. Holliday did perform the con· tract so far as she was obligated to do by rendering the services contracted for, and if you further find that the said Mr. J. W. Patrick breached the contract by having failed or refused to make his will devising the property described in . . the petition to Mrs. Holliday as he had contracted to do, if you find that he had so contracted, you would be authorized to find for the plaintiff." The criticism is, in effect, that the word "substantially" relaxed the strict requirements as to the high degree of proof required to warrant specific performance of an oral contract to devise land in consideration of services rendered a deceased during his lifetime.

Before giving the instruction complained of, the judge charged the law as to the preponderance of evidence, and then stated: "In a case of this nature there is even a stronger rule or an additional feature to the rule as to preponderance of evidence. . . Specific performance of the contract will be decreed, where the parol contract is established so clearly and satisfactorily by the evidence as to leave no reasonable doubt on the minds of the jury as to the contract, and its performance on the part of the plaintiff, and the breach thereof on the part of the decedent. . . There can be no recovery by the petitioner . . until she has proven to your satisfaction, by a preponderance of the evidence, clearly and strongly and so satisfactorily as to leave no reasonable doubt."

The instruction complained of, considered in the light of the charge as a whole, is not subject to the criticism made upon it. *Landrum* v. *Rivers,* 148 *Ga.* 774, 783 (98 S. E. 477); *Epperson* v. *Stancill,* 180 *Ga.* 857, 858 (181 S. E. 170).

■ Another special ground complains because the court charged: "If you find that there was a specific contract made and entered into between the plaintiff and Mr. Patrick, and that

it was performed by the plaintiff, and that Mr. Patrick breached it by failing to make a will devising the specific property to the plaintiff which he had contracted to devise, if you find he did so contract, then I charge you that under such conditions the contract would not be inequitable merely because Mr. Patrick did not live more than several years, for under such conditions the early death of Mr. Patrick must have been in the contemplation of the parties at the time the contract was made, if one was made." The criticism is that the charge was erroneous because: (a) it was the expression of an opinion; (b) there was no evidence to support it; (c) there was no evidence that the early death of Patrick was in the contemplation of the parties when the contract was made; (d) the conditions enumerated by the court were not indicative of the early death of Patrick; (e) there was no evidence on the subject as to how long he would probably live; (f) the charge instructed the jury as to a fact that was not proved.

The charge as given was not properly adjusted to the pleadings and evidence. The petitioner alleged that she entered into the original contract with Patrick on July 1, 1937, whereby she was to render specified services during the lifetime of his aged mother: While the petition contains allegations to the effect that the agreement was reaffirmed on June 18, 1939, at which time the petitioner agreed to render similar services to Patrick and his mother, it was not alleged in count one how long the services to Patrick were to continue. Allegations were set forth in count two to the effect that the services were to be rendered during Patrick's lifetime as well as the lifetime of his mother, but this count was stricken by the trial judge and the case proceeded to trial only on count one, which, as shown by the transcript of the record sent to this court, did not allege how long the services were to be rendered to Patrick. While there was evidence to the effect that Patrick was in poor physical condition and needed nursing, and that the services were rendered to him as long as he lived, there was no evidence tending to show that his condition suggested an early death. In the above circumstances, the life expectancy of Patrick would have no effect on the question as to the enforceability of the alleged contract. On the contrary, the enforceability of the contract in equity would depend upon whether or not it was shown to be fair, equitable and just, when tested by the

life expectancy of the mother as of the date of the contract, and the court did not charge upon the above principle.

Since a new trial is granted because the evidence was insufficient to support the verdict, it is not necessary to decide whether the use of the language, "the contract would not be inequitable merely because Mr. Patrick did not live more than several years, for under such conditions the early death of Mr. Patrick must have been in the contemplation of the parties," would, if standing alone, have constituted reversible error.

*Judgment reversed. All the Justices concur.*