MATTHEWS, administrator, *et al. v.* BLANOS.

550

No. 15639.   NOVEMBER 14, 1946.

**562**

*Bussey, Fulcher & Hardin,* for plaintiffs in error.

*Harris, Chance & McCracken,* and *Lee, Congdon & Fulcher,* contra.

DUCKWORTH, Justice. (After stating the foregoing facts.) ■ "Contracts under which one of the contracting parties agrees with the other, for a valuable consideration, that he will make a will giving to the other property, either real or personal, have been sustained and enforced in America from the earliest times, and the validity of such contracts seems now to be beyond all doubt." *Banks* v. *Howard,* 117 *Ga.* 94, 96 (43 S. E. 438). However, "specific performance is not a remedy which either party can demand as a matter of absolute right, and will not in any given case be granted unless strictly equitable and just. Mere inadequacy of · price may justify a court in refusing to decree a specific performance of a contract of bargain and sale; so also may any other fact showing the contract to be unfair, or unjust, or against good conscience. And in order to authorize specific performance of a contract, its terms must be clear, distinct, and definite." *Shropshire* v. *Rainey,* 150 *Ga.* 566 (2) (104 S. E. 414) ; *Huggins* v. *Meriweather,* 177 *Ga.* 461 (1) (170 S. E. 483) ; *Whitehead* v. *Dillard,* 178 *Ga.* 714, 717 (174 S. E. 244) ; *Johns* v. *Nix,* 196 *Ga.* 417 (26 S. E. 2d, 526). The petition must allege the value of the services to be rendered and the value of the property, so as to show that the contract sought to be enforced is one not unfair or unjust or against good conscience. *Potts* v. *Mathis,* 149 *Ga.* 367 (100 S. E. 110) ; *Brogdon* v. *Hogan,* 189 *Ga.* 244, 249 (5 S. E. 2d, 657). There must be a sufficient specification of the items of service, or else the petition is demurrable. *Lansdell* v. *Lansdell,* 144 *Ga.* 571 (87 S. E. 782). "The fairness of a contract ·is usually to be determined as of its date, and the happening of subsequent events within the reasonable contemplation of the parties does not afford a defense." *Whitehead* v. *Dillard,* 178 *Ga.* 714, 717 (174 S. E. 244).

Tested by the above-stated principles of law, the petition as amended set forth a cause of action for specific performance. It alleged historically that the petitioner and the deceased were close

personal and devoted friends of many-years' standing, the relationship between them, after Yeakes moved from Thomson to Augusta, being in effect like that of father and son, and both being of Greek descent. On or about May 1, 1942, Yeakes agreed with the petitioner that, if the petitioner would render him described and detailed services, care and attention, and assist in the operation of a named restaurant of the deceased in the ways and manner detailed in the petition, Yeakes would make a will leaving to the petitioner all his property of every kind wherever situated. The petition then alleges that the petitioner fully complied with the agreement and details the particulars of such compliance, all of which correspond with the specification of services as called for by the alleged contract. The petition further alleges the failure of Yeakes to make the will as promised. It shows the value of the services of the petitioner in and about the business of the deceased as being at least $2000 per year, and alleges that the petitioner's services in looking after Yeakes' welfare, comfort and health, and caring for him in his periods of illness were incalculable in money. The estate of Yeakes, after the payment of all debts, was alleged to be approximately $25,000. Since the petition alleges that at the time the agreement was entered into Yeakes was 57 years of age, it will be found by consulting the Carlisle mortality tables found in the appendix to 70 Georgia Reports that he had a life expectancy of 16.21 years. Rendering services for such period at the alleged value of $2000 and more per annum would amount to a benefit of more than $25,000, the alleged value of the estate. When thus tested by the life expectancy of Yeakes, as is proper under *Patrick* v. *Holliday*, 200 *Ga.* 259 (36 S. E. 2d, 769), the relation of the value of the alleged services to the value of the estate is shown to be fair and equitable, and the contract would not be unenforceable merely because Yeakes might not have lived to the full extent of his expectancy. The general grounds of demurrer are without merit.

All grounds of special demurrer are without merit.

■ In making proof of an alleged contract under which specific performance is sought, the petitioner has the burden of showing the precise contract, not by a mere preponderance of the evidence, but beyond a reasonable doubt. *Printup* v. *Mitchell*, 17 *Ga.* 558 (63 Am. D. 258) ; *Scott* v. *Williams*, 167 *Ga.* 386 (145 S. E. 651) ;

*McDermott* v. *Lankenau,* 170 *Ga.* 585 (154 S. E. 149) ; *Brogdon* v. *Hogan,* 191 *Ga.* 647, 654 (13 S. E. 2d, 666), and cit. As was said in *Salmon* v. *McCrary,* 197 *Ga.* 281, 285 (29 S. E. 2d, 58) : "While the rule may be said to be a strict or harsh one, it is rightly so. Let it be remembered that one who seeks specific performance of an alleged oral contract as against the estate of a decedent is, in effect, asking that property which would otherwise descend by inheritance, as fixed by the law, or by will as determined by the owner, be decreed to be in him. The law quite properly favors the disposition of property through the channels it has prescribed, and requires strict proof to divert it from those channels. When one dies, and is thus no longer able to manage his own estate, the law undertakes to stand as guardian for it and to see that it is legally disposed of, either to his heirs at law or to his legatees under a will as the case requires. In such confidence we live and die, protected by the safeguards established by the law." Besides establishing the contract, the person seeking specific performance must also show a substantial compliance with his part of the agreement. *Lee* v. *Lee,* 191 *Ga.* 728 (1) (13 S. E. 2d, 774) ; *Christopher* v. *Whitmire,* 199 *Ga.* 280 (34 S. E. 2d, 100). Notwithstanding the fact that the verdict of the jury in favor of the petitioner must rest chiefly upon the testimony of Jim Gorgwitch, an uneducated Jugoslavian, such testimony and all reasonable inferences therefrom authorized the jury to find that the alleged contract had been shown with the requisite certainty demanded by the law, and that the petitioner had fully complied with that agreement. This witness became a partner with Yeakes in the operation of a restaurant about two years before the death of the latter on May 11, 1944. His testimony, properly construed, authorized the jury to find that the contract was entered into in May, 1942. He was not present when it was made, but his testimony, though delivered in the language of an unlettered man and somewhat disjointed, was positive and unequivocal that, about the time he became a partner with Yeakes in 1942, and on several occasions thereafter, he heard Yeakes and Blanos, the petitioner, reaffirm and discuss the agreement which is relied upon and which the witness fixed as being in May, 1942. It was not necessary that the precise day of the month of May, 1942, be shown. No question of the statute of limitations is here in-

volved, nor are we concerned with any consideration which would make the absence of the day of the month of May, 1942, harmful to the defendant. When the somewhat disconnected testimony of the uneducated friend and partner of Yeakes is considered in its entirety, it can not be said that the contract as alleged was not clearly established beyond a reasonable doubt or that compliance on his part was not shown by the petitioner. The testimony of Gorgwitch speaks for itself, and a detailed analysis even of its substance would unduly prolong this opinion. Suffice it to say that he detailed the agreement as reaffirmed in his presence by the parties and the manifold services rendered by the petitioner, testifying that these services were those that, as he gained from the parties, Blanos promised to render to Yeakes and in return for which Yeakes promised Blanos that at Yeakes's death he would leave all of his property to Blanos. When the testimony of Jim Gorgwitch is supplemented by that of others set out in the statement of facts, the judgment of this court must be an affirmance of the action of the trial judge in overruling the general grounds of the defendants' motion for new trial.

Certain contentions of the defendant will now be noticed. Jim Gorgwitch testified that Yeakes said that Blanos was "my boy" and that he liked him and was going to do everything he could for him, and the witness heard Yeakes tell Blanos that, if he should marry, he would buy him a home, furniture, and everything he wanted; that at that time the witness reminded Yeakes that Blanos had a mother and a father, and Yeakes replied, "I like the boy and I do everything I can for him as long as I like him." On another occasion, according to the same witness, Yeakes told him twice in the presence of Blanos that "he ain't got nobody or a home and he ain't got nobody in this world, and he might as well leave it to George as anybody he knows," and Yeakes further said, "Everything I got I am going to leave it to George." From such portion of the testimony of Jim Gorgwitch it is contended by the defendant that there was a conflict on the main issue in the case, and that the most that can be said is that the evidence, properly construed, does not show a contract but only the expression of gratitude by Yeakes for services rendered; and that, as ruled in *Barnett* v. *Henry*, 200 *Ga.* 365 (37 S. E. 2d, 340), the wishes and desires of the intestate can not be substituted for a contract such as would authorize

a decree for specific performance. Standing alone, the testimony just mentioned would not authorize a decree for specific performance, but as we have already shown, there was testimony which clearly established and proved the contract relied upon, and the evidence of Yeakes's gratitude or expression of intention to leave his property to Blanos is not inconsistent with and does not negative the other testimony showing a precise contract and full performance. We are also referred to testimony that, before being taken to the hospital in his last illness, Yeakes, while at the restaurant and after remarking that, "If anything happens to me I leave everything I got to George," pointed to the cash register and said to Gorgwitch, "There's money there and the bills and stuff I paid out of the drawer," and "That is yours and take care of it." It is insisted that thus a conflict is raised as to the exact contract, this testimony showing an intention that the money in the cash register belong to Jim Gorgwitch, and only the remainder of Yeakes's property go to Blanos, the petitioner. This argument, however, overlooks the fact that the disposition of the money in the cash register was not made as of the time of the alleged contract to leave everything to Blanos, and that the jury was authorized to find that this was not a gift, but simply the adjustment of some partnership interest of Gorgwitch, since he testified that Yeakes said he was to have it "because he didn't pay me that agreement when I left there."

It is also contended that the evidence shows that the services rendered by the petitioner in and about the restaurant were on behalf of the partnership and not to Yeakes individually. The contract is shown to have been entered into in 1942 before Gorgwitch became a partner with Yeakes in that year. As then made it contemplated services to Yeakes in his business, but the fact that Gorgwitch became a partner in the operation of the restaurant, and Blanos' services were rendered to that business, does not fail to show a performance of the agreement. Yeakes's business appears mainly to have been the operation of the restaurant, but though he did not own the entire interest therein, in serving the partnership Blanos was serving Yeakes because he was vitally interested in its success.

It is further argued that, whereas the petition alleged that the services of Blanos in advising and helping Yeakes in his business matters were worth at least $2000 per year, the testimony of Jim

Gorgwitch was that the services to the restaurant were worth about $1000 "apiece" to the partners; and that, as the services were not performed but for about two years, the disproportion in values is too great for the award in equity of an estate of $25,000. The testimony of Gorgwitch was that Blanos's services to the business were worth about $2000. His further statement that they were worth $1000 "apiece" was merely an appraisal from the standpoint of his partnership interest. The business in which Gorgwitch became a partner with Yeakes was the same business for which Blanos's services were contracted by Yeakes, and the fact that Gorgwitch shared in the benefits of Blanos's services does not show any failure of Blanos to contribute services, contracted for by Yeakes, of the value of $2000. As previously pointed out, services of such value for an expectancy of 16.21 years would amount to more than the value of the estate.

The further contention that the evidence shows that Blanos was in fact paid for his services to the restaurant is not borne out by the record. The testimony of Gorgwitch on this point is that Blanos was paid no salary, and while occasionally Gorgwitch gave him $10 or other small sum from the business, it was only a gratuity and he never knew Yeakes to give or pay him anything.

■ The special ground of the motion for new trial complaining of the charge of the court as to the incompetency of the petitioner to testify in the case is without merit. The charge stated a correct and applicable principle of law, and was not harmful or confusing to the jury in any respect. The issue was whether or not the deceased had in his lifetime made a contract with the petitioner as contended by him, and obviously the petitioner was incompetent to testify as to any transaction or communication with the deceased respecting this issue. Whether or not he could, as argued by the plaintiff in error, have testified to transactions or communications not in his own favor, is merely to present an academic question entirely foreign to the real issue or required testimony here. Certainly no harm resulted to the defendant by reason of this charge.

The charge of the court, that the testimony of an unimpeached witness, where there is no other testimony or evidence in conflict with his, can not arbitrarily be disregarded, stated an applicable and sound principle of law. Of course, the stated rule does not mean that the jury are obliged to believe testimony which under

the facts and circumstances they discredit, but means that they are to consider the testimony of every witness who is sworn, and not arbitrarily disregard the testimony of any witness. *Brunswick & Western R. Co.* v. *Wiggins,* 113 *Ga.* 842, 844 (1) (39 S. E. 551, 61 L. R. A. 513) ; *Wilson* v. *Gray,* 34 *Ga. App.* 320 (129 S. E. 297) ; *Fincher* v. *Harlow,* 56 *Ga. App.* 578, 581 (193 S. E. 452). The court was not obliged to charge as to the impeachment of witnesses where no request was made, and if any additional instruction was desired a proper written request should have been made. *L. & N. R. Co.* v. *Thompson,* 113 *Ga.* 983 (1) (39 S. E. 483) ; *Cutis* v. *Geiger,* 176 *Ga.* 864 (4) (169 S. E. 127). Certain testimony of the witness Gorgwitch, pointed out by the movant as creating a discrepancy in his testimony, does not in fact amount to such, and the charge as given was not error.

The charge of the court complained of in the third special ground of the motion, that "the fairness of a contract is usually to be determined as of its date, and the happening of subsequent events within the reasonable contemplation of the parties does not afford a defense," stated a principle of law which was pertinent and applicable in the present case, and was not error for any reason assigned.

The refusal to admit in evidence a certain document, as complained of in the fourth special ground of the motion, was not error for any reason assigned. It purported to be only a copy or original of a written appearance and claim filed in the Court of Ordinary of McDuffie County, Georgia, by two alleged closest kin of Peter Yeakes, through two named attorneys, in the matter of the estate of Yeakes, but it was neither sworn to nor certified, and clearly was not admissible as evidence for any purpose.

*Judgment affirmed. All the Justices concur, except Atkinson and Head, JJ., who dissent.*