SAVANNAH BANK & TRUST COMPANY, executor, *et al.* *v.* WOLFF.

No. 13372.   OCTOBER 18, 1940.   REHEARING DENIED NOVEMBER 20, 1940.

Reid, C. J., and Atkinson, P. J., being disqualified, Judges Hugh M. Dorsey and Paul S. Etheridge were designated for this case.

*Travis & Travis* and *Andrew J. Ryan Jr.,* for plaintiffs in error.

*Abrahams, Bouhan, Atkinson & Lawrence* and *Aaron Kravitch,* contra.

ETHERIDGE, Judge.   This case is before us on exceptions to a judgment of the trial court overruling general and special de-

murrers to the petition as amended. Defendants (plaintiffs in error) set forth in their brief a copy of the petition as it reads after final amendment; and the defendant in error conceding its correctness, we shall accept it as the petition to which the demurrers are directed.

Shirley Wolff, by next friend, brought suit against Savannah Bank and Trust Company and Minnie Lee Wamsley as coexecutors of the last will and testament of Max L. Wolff, and alleged the following facts: Max L. Wolff and Nellie Montgomery lived together as common-law husband and wife from the year 1911 until 1932, except for one interval which occurred in 1925, when they separated for a few months. During this whole time Nellie used the name Mrs. Max L. Wolff, lived with him in whatever home he maintained, and was generally held out to be and known as his lawful wife. In the spring of 1930, Max, having had no children by Nellie, desired to adopt a child. Efforts were made to find a suitable baby, and finally in May, 1930, they learned of the plaintiff Shirley, who had been born a short time before out of wedlock to a woman known to Max and Nellie as Martha E. Forbes. The petition alleged that the putative father had abandoned the mother and child and "lost parental control" which thereby vested in the mother. Negotiations followed between Max and the mother, which culminated, as alleged, in a contract, the mother agreeing to relinquish and surrender the child and all her parental rights in the child to Max, and he agreeing to take, care for, and adopt the child and leave her one half of his estate at death, plus a five-thousand-dollar insurance policy on his life, to assure her education. Pursuant to this agreement the child was given by her mother to Max and Nellie. From this time until the early part of 1932 Shirley lived with Max and Nellie as their child, and always knew them as her parents. She went by the name Shirley Wolff, and was treated in all respects as Max's daughter. In 1932 Max and Nellie became estranged, and separated. Max moved to other quarters and Nellie kept Shirley with her in the home where they had lived together. Both were supported by Max, and until his death he continued to treat Shirley as his daughter. She continued to use his name and to know him as her father. He saw her often, visiting her at Nellie's home, taking her riding, and having her sent to visit him. The petition sets forth at some length the af-

fection and love which each demonstrated for the other, and the advantages, educational opportunities, and gifts which he gave her until his death in 1939.

After taking Shirley, Max made three wills. In two of them, it is alleged, he made ample provisions for her. They were destroyed and revoked. The third was made about forty-five days before his death and during his last illness. In it he omitted Shirley completely, giving the bulk of his estate to Miss Minnie Lee Wamsley, who was his secretary. She and the defendant bank were named coexecutors. The exact provisions of the will are not important on this appeal, nor are the remaining allegations concerning the condition of the estate and its management by the executors.

A second count repeats the facts already stated, and adds these: In 1933, while Max was living apart from Nellie, a complaint was made to the police authorities that Shirley was being neglected and reared under improper influences. Because of religious objections, Max did not wish to marry Nellie by ceremonial marriage, and he felt that adoption proceedings in Savannah would be embarrassing to all of them. Therefore he caused Nellie to take Shirley to Chattanooga, Tennessee, Nellie's former home, and adopt her there, using her maiden name, Nellie Montgomery. The petition alleges that he assured Nellie that this would in no wise affect his obligations to Shirley, and that Shirley would continue to live with them and be known as Shirley Wolff. On their return to Savannah Nellie and Shirley continued to reside apart from Max but under the circumstances previously related. The relief prayed was specific performance of the contract to devise and adopt. General and special demurrers were filed. Some grounds of special demurrers were cured by amendment. The remaining special and all general demurrers were overruled.

■■ Contracts to adopt and contracts to devise have given rise to much litigation in Georgia, and have been the subject of many opinions by this court. Whatever the result of any particular case may have been, it is clear that both contracts to adopt and contracts to devise are recognized and enforced. In the present case only the enforcement of the obligation to devise will be the effective and valuable remedy, the death of the obligor testate making an adjudication of the status of the child wholly insufficient. But the agreement to adopt is inextricably woven into the whole picture,

because the contract was single and indivisible, motivated by one desire, and supported by the same consideration. Moreover, the authorities dealing with and enforcing contracts to adopt lay down many principles which are controlling in determining whether equity can enforce the obligation to devise by specific performance, and point out many considerations which are persuasive in determining when this relief will be made available. The first question to be answered, logically and chronologically, is what was the effect of the transaction between Martha E. Forbes and Max L. Wolff when she surrendered the child to him, foregoing her parental rights forever, in return for his promise to take, care for, and adopt the child and leave her one half of his estate by will? Let us assume for the moment that this agreement was in writing, thus eliminating the problem of the statute of frauds and presenting the single question: was there a contract? Only one of the essential elements of contract is assailed by the demurrants as missing, a consideration flowing from the parent or child, sufficient to bind the promisor. Their argument that no sufficient consideration exists is based on the fact that no Georgia case dealing with contracts to adopt and devise involves a mere delivery of the child by the natural parent to the foster parent. In every case considered, the passage of some years, during which the child is sometimes shown to have been economically valuable to the foster parent, has intervened. Indeed the language used in many cases seems, at first glance, to grant relief as in tort rather than contract, basing the claimant's recovery on an estoppel arising from the foster parents' conduct in treating the claimant as a natural child, with the consequent effect on the child's position and life. *Crawford* v. *Wilson,* 139 *Ga.* 654 (78 S. E. 30, 44 L. R. A. (N. S.) 773), is typical. The court in that case said: "When a gentleman of wealth enters into an agreement with a poor man that the former will take the child of the latter, . . and leave him certain property, and there is part performance, the child is entitled to have the agreement carried out, 'his right . . being derived, not from the contract itself, but 'from what has been done under it, and the wrong he will otherwise sustain.'" But a careful consideration of this and other cases discloses that in every case there was a contract which was enforced by equitable remedy, and these considerations were merely appeals to the conscience of the court in

making equity available. And it is further apparent that the contract itself is established squarely on the mutual acts and promises of the foster parent and the natural parents in their own behalf and for the child.

In *Chamblee* v. *Wayman* 167 *Ga.* 821 (3) (146 S. E. 851), the court held: "In an equitable suit brought against an administrator whose intestate was alleged to have made an oral contract with the father of two small children, agreeing to take the children, adopt them as her own, and rear and educate them, and make them her heirs, in which it was prayed that the administrator be required to specifically perform the contract, it is sufficient to establish the contract for it to be shown that the father of the children completely and absolutely surrendered them to the deceased according to the contract." See *Crawford* v. *Wilson,* supra; *McWilliams* v. *Pair,* 151 *Ga.* 168 (106 S. E. 96) ; *Richardson* v. *Cade,* 150 *Ga.* 535 (104 S. E. 207) ; *Copelan* v. *Montfort,* 153 *Ga.* 558 (113 S. E. 514) ; *Ansley* v. *Ansley,* 154 *Ga.* 357 (114 S. E. 182) ; *Columbus Bank & Trust Co.* v. *Jones,* 176 *Ga.* 620 (168 S. E. 561). And this consideration will support a contract to devise. This was clearly recognized, though not directly held, in *Pair* v. *Pair,* 147 *Ga.* 754, 759 (95 S. E. 295), where the court said: "All our decisions are to the effect that the contract, whether one to adopt, with the resulting rights of an heir at law, or one to give the child a share in the estate of the adopting parent, is a contract which when performed by the child creates a status which a court of equity . . has power to declare." The agreement in the case at bar was not entered into because of "natural love and affection" nor in response to any "moral obligation." The fundamental right to contract freely includes the right to bargain for such consideration, taken at such valuation, as the parties choose. It is true that creditors may attack a voluntary transfer of property based upon "good" and not "valuable" consideration as defined by the Code of 1933, § 20-303. But there is here no question of creditors left empty-handed by a voluntary transfer of property, and therefore this distinction between "valuable" and "good" consideration, urged by the plaintiffs in error, is immaterial. Max Wolff and Martha E. Forbes entered into a contract based upon mutual acts and promises. Code, § 20-304. The detriment to the mother and the consideration accruing to Max Wolff from the mother and child can not, it is true, be re-

duced to money, but the parties in the exercise of their right to freely contract have placed their values on the consideration, values recognized in equity and law. The Supreme Court of Missouri in Berg *v.* Moreau, 199 Mo. 416 (97 S. W. 901, 9 L. R. A. (N. S.) 157, 160), said: "We should also consider the nature of the services agreed upon, which were performed, and which might have been required under the contract. Their value can not well be estimated in money. The law furnishes no standard by which a money value can be placed upon them. Equity can only make an approximation in that direction by carrying out the agreement in which the parties fixed a value between themselves." The Missouri court was considering a woman's claim to the devise of realty based on an oral contract. The consideration in question was her acts of service and kindness in caring for the promisor during his last years of life. That court, far from being moved by "inadequacy" of consideration to deny equitable remedy, rejected a quantum meruit valuation of the plaintiff's services, urged by those resisting the claim, and granted specific performance of the contract to devise.

The consideration moving to Max Wolff in the present case is further emphasized in *Gorman* v. *Sherrod,* 154 *Ga.* 766 (115 S. E. 259), where the foster parent did adopt the child. Later the foster parent contracted to devise property, in consideration for which the child agreed to abandon her intention to leave the foster parent and agreed to continue to live with her and work for her. The court held that as the parent was already entitled to the companionship and services of the child, no consideration existed and no contract resulted. This right to the companionship and services of the child, Shirley, existed in Max from the moment the natural mother surrendered that right. It was part of the consideration, and it is indisputably a thing of value. The petition under consideration does allege a contract to adopt and devise, based upon sufficient consideration, to authorize the granting of specific performance.

The contract declared on comes clearly within the statute of frauds. Code, § 20-401. The petition seeks to avoid the effect of this rule by alleging facts which bring the case within an exception to its operation, an exception as clearly established in equity as the rule itself in law, though one which must be applied with the greatest caution. § 20-402. The petition alleges that pur-

suant to and in reliance on the agreement between herself and Max Wolff, Martha Forbes gave him her child and relinquished to him her parental rights forever. She thereby fully and completely performed her part of the contract. By that act she altered beyond recall the whole future of herself and the child, Shirley. On the child's part it appears that she gave to Max the full measure of filial devotion, the companionship, obedience, and service which the contract required of her under whatever circumstances Max created for her, until the day of his death. That such acts of performance unequivocally refer to and result from the contract in question, and are sufficient to justify equity in requiring specific performance of contracts to adopt and devise, and are persuasive in influencing the conscience of the court to make the remedy available has been too often held to be now questioned. *Crawford* v. *Wilson, McWilliams* v. *Pair, Richardson* v. *Cade, Copelan* v. *Montfort, Ansley* v. *Ansley, Chamblee* v. *Wayman,* and *Columbus Bank & Trust Co.* v. *Jones,* supra; *Harp* v. *McGehee,* 179 *Ga.* 836 (177 S. E. 244); *Heery* v *Heery,* 144 *Ga.* 467 (87 S. E. 472). The plaintiffs in error seek to distinguish these cases from the present case, pointing out that in each of the cited cases the child lived with the foster parent for many more years than Shirley lived with Max Wolff. If length of time were the test, this distinction would be sound. But the principle upon which these decisions are based is that equity will grant specific performance of the contract to adopt or devise when the child has actually so occupied the position of a child to the foster parent as to change the status of the child and render it inequitable to deny the remedy. Can we say that ten, or eight, or five, or twenty years is a minimum? It is natural that in any case the court will emphasize the length of time during which the child has lived with the foster parent, in order to lend weight to the child's equity; but no case makes the passage of time the measure of the right.

In *Bell* v. *Elrod,* 150 *Ga.* 709 (105 S. E. 241), cited and relied on by the plaintiffs in error, the court said: "In all the decisions of this court recognizing the right to specific performance of contracts of the character involved in this case, the child had so long occupied the position of a child to its foster parent, and so far performed the covenants imposed upon it by the terms of the contract under which it was delivered to the foster parent, as would

change the status of the child and render it inequitable to deny specific performance of the contract." In that case the facts were that the putative father and the mother of the child entered into negotiations concerning the adoption of the child by the father. These negotiations extended over a period of two or three years and until the death of the father. Just before his death an attorney had been employed, the petition for adoption drawn and consented to by the mother, and the child delivered to the father, but the adoption had not been completed. Specific performance was denied, the court saying: "The proper interpretation of the petition is that what the parties had in mind was a legal adoption of the child, and that such adoption never occurred. The allegations fail to show such performance of the contract or such change in the status of the child as would authorize a court of equity to decree specific performance of the contract." The delivery of the child in *Bell* v. *Elrod* was not in reliance on a promise to adopt, but for the purpose of an actual adoption which was never completed, because of the death of the father. *Bell* v. *Elrod* is thereby sharply distinguished from the case now under consideration. And in every case where relief is denied the court has found some insurmountable defect which prevents it from following the line of authorities making relief available. But there is nothing in principle to distinguish the rights of Shirley in the present case from the rights upheld and enforced in *Crawford* v. *Wilson* or *Chamblee* v. *Wayman,* supra. The petition alleges every prerequisite to the granting of the relief sought, a positive contract to adopt and devise, relinquishment of the child to the foster parent, resulting in complete elimination of the natural parent from the life of the child, a complete change in the relationship and status of the child, and performance by the child of every filial obligation and duty to Max Wolff, the foster parent, until his death. The promise to adopt and devise set in motion a series of events which altered the life of this child beyond recall by any human power. Only equity by enforcing that promise can prevent injustice. This ground of demurrer was properly overruled.

■ It is urged by the plaintiffs in error that even though a contract did exist, as alleged, between Max and the natural mother, the adoption of the child by Nellie in the court of Tennessee constituted a novation, releasing Max from his obligation. In support

of this contention they insist that if the laws of Tennessee did not provide for notice to the mother of the adoption proceedings, they would violate art. 14, sec. 1, of the constitution of the United States, and therefore the courts of Georgia must assume that notice is required by Tennessee law and was actually given. And they argue further, that a presumption arises from this assumption that the mother consented to the adoption, and that this consent constituted a novation. "In every novation there are four essential requisites: (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, (4) the validity of the new one. If these essentials, or any one of them, are wanting, there can be no novation." 46 C. J. 578, § 11. Of these four essentials to a novation there is present in the instant case only one: the previous valid obligation between Martha E. Forbes and Max L. Wolff. Assuming for the sake of argument that the natural mother did have notice of the Tennessee proceedings, which is flatly contradicted by the allegations of the petition, we fail to see how this could in any sense be construed to be a new and valid contract between the parties to the original agreement, or wherein it would extinguish the old agreement. Novation is itself a contract and must have all the elements of a de novo contract. *American Sewer-Pipe Co.* v. *Matthews,* 19 *Ga. App.* 248 (3) (91 S. E. 284). These elements we can not create by presumptions. In 49 C. J. 39, § 15(6), it is stated: "There need be no direct allegation of a fact which is necessarily implied from other averments. . . But it is not sufficient that a fact may be inferable from the facts pleaded, where it is not necessarily implied. And it has indeed been said that under the codes a fact must be pleaded unless the law raises a conclusive presumption of its existence from the facts stated. In other words, the averment of a fact necessary to constitute a cause of action or defense can not ordinarily be obviated by the averment of a fact which raises only a prima facie or rebuttable presumption of the fact relied on." If there was a novation, an agreement between Max Wolff and Martha Forbes extinguishing the previous obligation and creating a new and valid contract, it does not so appear on the face of the petition or from any necessary implication from the facts pleaded. This ground of demurrer was properly overruled.

■ Can this action be maintained by Shirley as plaintiff by prochein ami, or must the natural mother be the party plaintiff as contended by the plaintiffs in error? The Code, § 3-108, declares: "As a general rule, the action on a contract . . shall be brought in the name of the party in whom the legal interest in such contract is vested." Interpretation of the language of this section in the light of the common-law rules in England and America, and its proper application to the facts of a given case, has always been a difficult task. It is obvious at first glance that the rule does not require the plaintiff to be a party to the contract, and this has been clearly recognized and stated in the case of *Peoples Bank of Calhoun* v. *Harry L. Winter Inc.*, 161 *Ga.* 898, 902 (132 S. E. 422), where it was held: "Where one's right of action depends upon a promise made for his benefit, and where the entire consideration moving to the promisee was furnished by him, it is immaterial that the alleged contract originated in an agreement to which he was not a party. The advancement or furnishing of the consideration will supply the necessary privity." In the opinion it was stated: "It is well settled that, under such circumstances, one for whose benefit an agreement is made, if he parts with anything of value thereunder, is entitled to enforce the agreement." In the instant case, the contract was made by the mother, not only for the benefit of the child, but in behalf of the child. As a result of it the whole status, position, and future of the child were altered irrevocably, and she was delivered into the parental control of Max Wolff. In compliance with the obligation thus imposed upon her, she rendered to Max complete filial obedience and devotion. These things combine to give her a privity to the contract, upon which she may maintain the present action in her own name. *Crawford* v. *Wilson, Pair* v. *Pair, Columbus Bank & Trust Co.* v. *Jones,* supra. In denying the right of a third party beneficiary to maintain action in *Shropshire* v. *Rainey,* 150 *Ga.* 566, 574 (104 S. E. 414), the court said: "The petitioner in the case at bar, as we have seen, was an utter stranger to the contract between her father, Jones, and Mrs. Barkesdale—she furnishing none of the consideration—her relation or status was in no wise changed or affected, nor was any trust created for her benefit under the terms of the contract." This language serves to emphasize the nature of Shirley's relationship to the contract and to the consideration in the present case

and by contrast to heighten the likeness of her rights and equities to those considered in *Crawford* v. *Wilson,* and similar cases, supra. Moreover, as is pointed out by the defendant in error, the contract to adopt and devise was entire; and though the effective relief will be the enforcement of the latter obligation only, the relief prayed is complete. Upon the clear authority of *Crawford* v. *Wilson,* supra, suit on contract to adopt is properly brought by the child. Every person who has any substantial interest in the result of this litigation or whose rights could in anywise be affected is before the court. Therefore equity can do complete justice in this action.

■ The remaining grounds of demurrer urged by plaintiffs in error in their brief are not as serious as those already considered. During his life Max received the full measure of the benefits for which he bargained during his life. His death makes a literal performance of the total contract impossible, but equity can and should enforce the remaining obligations in order to prevent a very great injustice to the child. See *Crawford* v. *Wilson,* 139 *Ga.* 654, 658 (supra). If the rule were otherwise, there could be no "virtual adoption" in any case. Nor is there merit in the contention that the contract was not specific. This contention is based on the fact that the petition alleges that Max Wolff made at different times two wills in which Shirley was left "large amounts" or a "trust fund." These are not alleged to be the terms of the contract. That is merely pleading evidence. Had Shirley been adequately provided for in a will, she may well have been satisfied with less than she was legally entitled to, and have considered it an acceptable performance. But the fact that the claimant sets forth the complete history of the case, in so far as the facts are known or knowable, does not dull in any degree the sharpness of the specific allegations of the terms of the contract set forth therein. Three grounds of demurrer are insisted on by plaintiffs in error in their brief: First it is urged that contradictory versions of the same transaction are alleged, in that in paragraph 12 of count 1 it is alleged that Nellie as Max's agent, and not Max in person as previously alleged, made the contract with the mother. A careful reading of this paragraph discloses that it is alleged that Max for himself and Nellie joined in the negotiations, as had been previously alleged. It further appears from a perusal of the petition in its final form that the allegations concerning the name of the

natural mother and the provisions of the previous wills are as full and complete as it lies within the knowledge of the defendant in error to make them. These grounds of demurrer were properly overruled.

*Judgment affirmed. All the Justices and Judges concur.*