44332. LEWIS v. STORCH.

Submitted March 3, 1969—Decided July 15, 1969.

*Poole, Pearce & Cooper, William F. Lozier,* for appellant.
*Claude E. Hambrick,* for appellee.

EBERHARDT, Judge. Each of the leases was admitted in evidence. The first designates both Lewis and Williams as lessees, was signed by both of them, is dated January 12, 1967, and is for a term beginning February 1, 1967, and ending January 31, 1972. Storch signed it as lessor and the signatures were attested by Etta S. Brundage.

The second lease names only Williams as lessee, was signed only by Williams as lessee, was dated January 12, 1967, and is for a term beginning February 20, 1967, through February 19, 1972. It was signed by Storch as lessor and the signatures were attested by Mary A. Lasseter.

This documentary evidence demands a finding that there were two separate leases. There is no possible reconciliation of the documents with the testimony of Storch. Both were signed by Storch. They were for different terms, named different lessees and were attested by different witnesses. He does not deny his signatures or the execution of each of them. Cf. *Moran v. Bank of Forsyth,* 129 Ga. 599 (59 SE 281); *Marable v. Mayer, Son & Co.,* 78 Ga. 60; *Cook v. Powell,* 160 Ga. 831 (14) (129 SE 546).

The inescapable conclusion from the evidence relative to the intended use, the city requirements for obtaining licenses, and the past records of the two men (Storch testified that Williams had a "clean" record and could obtain a license from the city) is that Storch did execute the second lease, inter alia, as Lewis explained, to enable a tenant in the property to obtain a license for operating the contemplated business (Lewis was ineligible for a license due to prior criminal convictions), and that it was in all respects a valid lease. A contention that it was a void lease, made only to evade the requirements of the licensing ordinance, is untenable.

Since Storch now declares on the first lease he is estopped to assert any intention that the second was intended to operate as a novation of the first.

The question, then, is whether he is lawfully in position to proceed for collection of rentals under the first lease.

"Every action shall be prosecuted in the name of the real party in interest." *Code Ann.* § 81A-117 (a). "An action shall be prosecuted in the name of the party who, by the substantive law, has the right sought to be enforced." 3A Moore's Federal Practice 221, § 17.07.

There is an elaborate annotation on the matter of concurrent leasings or transfers of the reversion in LRA 1915C 190 et seq. Under the old feudal system in England it was necessary to have the assent of the tenant before the landlord could make a valid transfer of the reversion, but that requirement was abolished under the Statutes 4 & 5 Anne, Ch. 16, §§ 9, 10 and 11 of George II, Ch. 19, § 11. These were in force during our continuance as a colony and were adopted by the General Assembly of this State as a part of the common law. See Cobb's Digest, 1851, p. 721; *Hannah v. State*, 212 Ga. 313, 322 (92 SE2d 89). Consequently, there has been and is no requirement that the tenant consent to a transfer by the landlord of his reversion, resulting in a substitution of landlords. Of course without the tenant's consent or release the landlord cannot by a transfer relieve himself of his own *obligations* to the tenant under the lease, but there is no proscription against a transfer of his *rights*. This can be effected by the making of a deed, granting the fee to another, assigning the lease, or it can be accomplished by the execution of a concurrent lease, which is sometimes referred to as an overlease. "The lessor may convey to a third person his reversion, by a concurrent lease, and the lessee thereunder becomes the landlord of the first lessee, with the right to collect the rent and enforce the covenants of the first lease until the expiration of the term of one or the other of the two leases. Wordsley Brewery Co. v. Halford, 90 L. T. N. S. 89; Attoe v. Hemmings, 2 Bulstr. 281; Harmer v. Bean, 3 Car. & K. 307; Horn v. Beard, 81 L. J. K. B. N. S. 935, 3 K. B. 181, 107 L. T. N. S. 87; Disdale v. Iles, 2 Lev. 88;

Holland v. Vanstone, 27 U. C. Q. B. 15; Cheatham v. J. W. Beck Co., 96 Ark. 231 (131 SW 699); Root v. Trapp, 10 Kan. App. 575 (62 P 248)." LRA 1915C 198.

"[T]he landlord may part with his rights pending the tenancy, and in that event the right to recover from the tenant would not be in the original landlord, but in his transferee. . . In such cases the tenant's attornment to the person acquiring the landlord's right is perfectly consistent with the maxim that the tenant cannot dispute his landlord's title; for the concept that there is an identity and a community of right in all the interdependent estates and holdings which may come about by operation of law or the act of the parties, as to any and all grades of title or possession, renders the title (putative or actual) of the landlord and that of the person acquiring his rights one and the same in legal contemplation." Powell, Actions for Land (Rev. 1946) 435, § 369. And see *Beall v. Davenport*, 48 Ga. 165 (15 AR 656); *Ferguson v. Hardy*, 59 Ga. 758; *Grizzle v. Gaddis*, 75 Ga. 350 (3); *Blitch v. Lee*, 115 Ga. 112 (41 SE 275); *Garrison v. Parker*, 117 Ga. 537 (43 SE 849); *Raines v. Hindman*, 136 Ga. 450 (71 SE 738, 38 LRA (NS) 863, AC 1813C 347); *Stewart Bros. v. Cook*, 24 Ga. App. 509 (101 SE 304); *Salter v. Salter*, 81 Ga. App. 864 (60 SE2d 424).

By execution and delivery of the second lease to Williams, Storch divested himself of any right to proceed against the lessees in the first lease for the collections of rentals accruing thereunder. He can, of course, collect rentals accruing under the second lease from the tenant named therein—but that is not the subject matter of this action.

The judgment here should have been for the defendant for the reason discussed.

*Judgment reversed. Felton, C. J., Bell, P. J., Jordan, P. J., and Deen, J., concur. Hall, Pannell, Quillian and Whitman, JJ., dissent.*

FELTON, Chief Judge, concurring specially. I concur in the judgment for the reason that under the facts of this case the evidence demanded a finding that there was a novation of the first contract by all of the parties to the first and second leases. The two contracts were absolutely inconsistent and could

not be carried out at the same time. All of the parties knew that the first contract could not be carried out and when they discovered this fact they all, willingly and with dispatch, co-operated in the procurement of the second contract. The plaintiff cannot be heard to say that he did not intend to release the defendant when he executed the second lease which did not include him and when he wilfully and falsely testified, as shown by the record, that he did not even execute a second lease but intended merely to sign a copy of the first, which the record shows to have been impossible. Code § 38-1806. "In charging on the law as respects impeachment of witnesses, it is proper to omit an instruction that the jury must disregard the entire testimony of an uncorroborated witness who has been successfully impeached. Whether the testimony of such a witness should be disregarded is, where the witness has not sworn wilfully and knowingly false[ly], a matter for the jury." Blumberg v. Grant, 34 Ga. App. 253 (2) (129 SE 144). The only thing that could possibly be said to be lacking to make the second lease a novation is the plaintiff's express consent to the substitution of Williams alone in the place of Williams and Lewis. How much more express could the intention be than the very second lease itself? Even if this express intention to create a novation is lacking, the circumstantial evidence demands the conclusion that such was the intention of all three parties to the leases. Express intention to create a novation is not necessary. Circumstances alone are sufficient. Acree v. Kay, 188 Ga. 783 (4 SE2d 820). In that case it was said: "It is not essential that all the parties expressly agree that the new contract shall take the place of the original contract, but only that they agree that the new contract itself be executed." Since the evidence demands a finding that the contract sued on was at an end and was superseded by the second contract by reason of the novation, a recovery on the first contract is precluded.

In this view there can be no question as to an overlease since there can be none if there are not two viable, enforceable leases.

PANNELL, Judge, dissenting. In addition to the statement of facts contained in the opinion, I would like to call attention

to the fact that when the case was called for trial, the defendants admitted a prima facie case and assumed the burden of proof. The rent sued for was $400 per month due for the months of November 1967, December 1967, January 1968, February 1968, March 1968, and $70 for a check which was dishonored on the rent due for October 1967. Both leases leased the property "for use as a nightclub, restaurant-cafe and bar" and neither lease was for a period in excess of five years and specifically provided that no estate shall pass out of the lessor and that lessee has only a usufruct, not subject to levy and sale, and not assignable by lessee except by lessor's consent. Additional details of the evidence will be discussed further in this dissent. I add these additional facts as they will have some bearing on the case and particularly as to one of the reasons why the majority decision on the basis of an overlease, even if the law of this State, has no application to the facts here.

*Let it be borne in mind that the majority opinion can only be supported if the evidence demands the factual conclusions reached therein,* this for the reason that the trial judge, to whom the case was submitted without the intervention of a jury, found for the plaintiff, and contrary to the contentions of the majority here. It is my opinion he was authorized to do so under the evidence. However, my dissent is not based solely upon this feature alone, but also upon what I consider a misapplication of the law to the facts, the finding of which is claimed to be demanded by the majority.

While I might be inclined to agree with the majority that the evidence shows conclusively a second lease contract was entered into, this does not compel the discrediting of all of the testimony of the plaintiff. Nor does it compel the discrediting of the testimony of the other parties.

My dissent is based upon three theories. (1) The evidence authorizes a finding that the second lease was void as made with intent to deceive the City of Atlanta into issuing a "pouring license" to a business partly owned by one disqualified to have such a license. If this be true, (a) it could not be effective as an overlease, and, if void, (b) it leaves the first

lease effective and enforceable. (2) If there be no evidence to authorize a finding that the second lease is void, then the evidence authorizes, if it does not demand, a finding that the second lease was for the purpose of substituting *Williams* as a tenant in possession operating the business requiring a license in lieu of *Lewis and Williams,* with no intent of the parties of releasing *Lewis and Williams* of their obligations under the first lease. It appears that the majority contend that this result is demanded by the evidence, as they agree that the second lease constituted no novation of the first lease. However, this result does not demand a finding that the landlord by the execution of the second lease intended to convey to Williams his *reversionary interest* in the premises so as to create a substitution of landlord as well as tenants in the first lease. (3) Even should we assume the evidence showed without dispute there was an intent to substitute landlords by the execution of the second lease from the plaintiff to Williams, the evidence demands a finding that Williams abandoned this lease (the second lease) *and that he is asserting no rights thereunder and that the rent sued for accrued after such abandonment of the second lease by him.*

1. I cannot agree with the so-called inescapable conclusion that a finding that the second lease was void and was made only to evade the requirements of the licensing ordinance is not authorized by the evidence, and that a contention it is so authorized is untenable. I agree that the evidence would authorize a finding to the contrary, but it does not demand a finding that *the second lease was not void.* If the second lease was entered into for the purpose of indicating that Lewis was not a party to the lease and the operation of the business, when he in fact actually was, so as to secure a pouring license for the business contrary to the ordinance of the City of Atlanta, there is no question but that the second lease would be void as contrary to public policy. There is also no question but that if the lease be void, the overlease (it being the void lease) is ineffective and a suit may be maintained on the first lease by the plaintiff.

Let us examine the evidence and see whether a finding would

be authorized in favor of this construction of the situation. The evidence showed without dispute that Lewis and Williams, after the signing of the first lease, went into possession of the premises, made a down payment on furniture and fixtures which were installed on the premises to be used in the business contained thereon with an instalment loan for the remainder of the purchase price. The plaintiff testified that his lease was based mostly on Mr. Lewis because of the fact that he was the man already in business and financially able to back up the lease and Lewis had explained to him that he needed Williams because Williams could obtain a license from the city. The plaintiff further testified that he gave the keys to the premises to the defendant Lewis under the first contract. After the first lease was entered into with Lewis and Williams by the plaintiff, and after the purchase of the fixtures, Lewis and Williams discovered that if Lewis (who had a police record) was a tenant and interested in the business, no license could be procured because the city required that the lease be deposited with it *as evidence* of who may be operating the business on the premises. Because of this, both Lewis and Williams went back to the landlord, explained the situation, and the second lease was entered into. There was no evidence indicating that this was intended to be a novation or that there was any intent to release Lewis from his obligation to pay rent to the plaintiff. The evidence was to the contrary. In view of the evidence that the first lease signed by both Lewis and Williams leased the premises "for use as nightclub, restaurant-cafe and bar" and the fact that the second lease was not a novation of the first and that Lewis and Williams were still obligated to the first lease (the majority agree as to this), and in view of the testimony of Williams that he and Lewis entered into the first lease and got the second lease for the reasons already stated and the testimony of Williams that he and Lewis were in partnership at the time the lease was signed and when the fixtures were purchased (although he immediately thereafter stated he was really in partnership with Lewis's wife), it is an inescapable conclusion that the trial judge was authorized to find that the second lease was not intended to take the place

of the first lease, but was intended solely for the purpose of deceiving the licensing authorities of the City of Atlanta into believing that the business was operated by Williams, when the real owners were Lewis and Williams. If the trial judge could have found that the second lease was void and that finding would have supported his judgment in favor of the plaintiff as against the overlease theory, then we must affirm him.

If the second lease is void, this does not affect the validity of the first lease, as the invalid contract is not sought to be enforced nor are the fruits thereof to one of the parties sought to be recovered by the other. See in this connection *Code* § 20-501; *Ingram v. Mitchell*, 30 Ga. 547; *Flournoy v. Highlands Hotel Co.*, 170 Ga. 467, 471 (2) (153 SE 26); *Melton v. State*, 186 Ga. 660 (198 SE 695); *Robinson v. Reynolds*, 194 Ga. 324 (1) (21 SE2d 214); *Smith v. Nix*, 206 Ga. 403 (2) (57 SE2d 275); *Jones v. Dinkins*, 209 Ga. 808 (76 SE2d 489); *Wellmaker v. Roberts*, 213 Ga. 740, 742 (101 SE2d 712); *Gaddy v. Silverman*, 86 Ga. App. 239, 245 (71 SE2d 277); *Standard Club v. Saphire*, 97 Ga. App. 135 (102 SE2d 72); *Jones v. Faulkner*, 101 Ga. App. 547 (114 SE2d 542). For this reason alone, the trial judge should be affirmed.

2. Should we assume that there is insufficient evidence to authorize a finding that the second lease is void, then we would have to say that the second lease was for the purpose of substituting *Williams* as a tenant in possession, operating the business requiring a pouring license, in lieu of *Lewis and Williams*, as co-tenants, with no intent of the parties that *Lewis and Williams* be released from their obligations under the first lease.

The second lease contract then, under these circumstances, would be a legal contract, but merely because it was found to be a legal contract would not necessarily demand a finding that it was a novation of the first, if there be sufficient evidence to authorize a finding of the absence of an intention of the parties that it be a novation. While the majority agree there is no novation of the first lease, they do so apparently based upon this statement: "Since Storch now declares on the first lease, he is estopped to assert any intention that the second was

intended to operate as a novation of the first." Storch never made any such contention, but this contention was made by Lewis seeking to release himself from his obligations under the first lease, and even if Storch be estopped, Lewis is not, nor is the court estopped.

A reference to the subject of novation, both statutory and case law, might be helpful. "One simple contract as to the same matter, and on no new consideration, does not destroy another between the same parties; but if the new parties are introduced by novation, so as to change the person to whom the obligation is due, the original contract is at an end." *Code* § 20-115. I will concede that for the purposes of this law the change from a joint lease signed by Lewis and Williams to a lease signed only by Williams meets the requirements of this section as to a change in parties. However, the section does not constitute the whole law on the subject nor does the mere change in parties constitute the only element in a novation. "There are four essential elements of a novation: (1) a previous valid obligation, (2) the agreement of all the parties to the new contract, (3) the extinguishment of the old contract, (4) the validity of the new one. *Savannah Bank & Trust Co. v. Wolff,* 191 Ga. 111, 120 (11 SE2d 766); *Cowart v. Smith,* 78 Ga. App. 194, 198 (50 SE2d 863)." *Miller-Terrell, Inc. v. Strother,* 85 Ga. App. 763, 765 (70 SE2d 160). See also *Williams v. Rowe Banking Co.,* 205 Ga. 770, 771 (55 SE2d 123). In the case of *Gresham v. Morrow,* 40 Ga. 487, it appeared that Gresham held a note against Joseph Holland and Bostwick and subsequently "gave it up" when he took a new one signed by Bostwick and one Benjamin Holland "in lieu thereof." The Supreme Court held that a novation had occurred, but in the course of the opinion stated: "The mere taking of one note in renewal of another, is not a satisfaction of the first. Nor is the taking of a note of a third person, unless the first note be given up, or there be an agreement that the note of the third person is taken in satisfaction." p. 489. In *Few v. Hillsman,* 18 Ga. App. 207 (89 SE 79) a claimed novation was held not to have occurred "for there was no testimony that the plaintiff agreed to release the original debtor, but, on the con-

trary, the original debtor was one of the defendants" in the case. A "novation" by substitution of a second obligor for a first obligor must show a mutual agreement among all the parties, whereby the first obligor and the original obligee agree that a new obligor be substituted and the original obligation be discharged. See *Leverette v. Harmony,* 69 Ga. App. 126 (24 SE2d 856). I agree that the release of an obligor and the substitution of another may be by express terms, or be inferred by the acts of the parties, or by necessary implication from construction of the subsequent agreement. *Yancey Bros. Co. v. Bowling,* 92 Ga. App. 291 (2) (88 SE2d 566). There is certainly no express substitution in the present case and while a substitution might possibly be inferred from the acts of the parties, no such inference is demanded; on the contrary, the opposing inference is authorized. In view of all the evidence and the circumstances surrounding the execution of the second agreement, no necessary implication arises from the construction of the second agreement that Lewis was to be released from his obligations to pay rent under the first agreement. It must be borne in mind that the burden of proving the novation and the elements thereof rests upon the defendant Lewis and, in the absence of such proof, the plaintiff is entitled to prevail on this issue. Not only that, but since the trial judge has found in favor of the plaintiff, the evidence must demand a finding that all the elements of a novation exist. If there be sufficient evidence to authorize the trial judge to find there was no intention of the parties that Lewis be released from his obligation to pay rent under the first lease contract, then we cannot reverse him. Let us further examine the evidence in the light of these rulings. The plaintiff testified in reference to the first lease: "My lease was based mostly on Mr. Lewis because he is the man in business and financially able to back up the lease. Mr. Lewis has explained, in other words, that he needs Mr. Williams because Mr. Williams can obtain the license from the city because he knows people and he has got a clean record. This was his answer to me." The plaintiff further testifies that he handed the keys to these premises to the defendant Lewis under the first contract, and that when

plaintiff took possession of the premises after Williams abandoned the business because of illness, he called Lewis to bring him the keys and that Lewis said he would be out but never showed up with the keys; that he called on Lewis to pay the past due rent and Lewis replied: "I am going to come to your place and I am sure we will settle up," and that Lewis never denied owing the rent. The defendant Williams testified that the second lease was entered into in his name "where we could present it to the police committee to get a pouring license." There is no evidence from Williams that in executing the second lease there was any agreement between the parties that it would replace the obligations of payment of rent in the first lease. Williams further testified that when he became sick and unable to work a short time later, he discussed the matter with Lewis, that is, the fact that he was going to have to quit the business and that they got a lawyer to draw up a written agreement dissolving the partnership between Williams and Lewis's wife. Lewis testified that after he found out they could not get a license with him on the lease, that he and Williams so informed Mr. Storch, the plaintiff, and the second lease was drawn, that he and Charlie Williams had purchased the furniture and equipment before they found out that Lewis could not get a license. While he testified further that the first lease "wasn't no good," because a pouring license could not be obtained with the lease, he testified that he had nothing in writing releasing him from his obligations under the first lease, that he had never paid any rent under either lease.

In my opinion, this evidence with the other evidence previously set forth, is sufficient to authorize a finding that neither the plaintiff nor the defendant Lewis nor Williams had any intentions that the second contract would release Lewis from his obligations to pay rent under the first, but that the second contract was entered into solely for the purpose of securing a pouring license so that the business in the leased premises could be operated by the persons originally intending to do so, and so that such persons could secure this license legally and properly.

I have discussed the question of novation because the ma-

jority opinion in holding there was no novation did so upon erroneous conception that the plaintiff was claiming a novation, whereas the defendant Lewis was the one claiming novation.

The trial judge was authorized to find that Lewis had no interest in the operation of the business after the second lease was executed, but that only Williams and the wife of Lewis had any interest in the business and that the second lease was not executed for the purpose of deceiving the City of Atlanta into issuing a pouring license to a business, an owner of which was not qualified to be licensed under the ordinance. The trial court was authorized to find that Lewis by executing the first lease and making the down payment on the equipment was merely lending his credit to the enterprise and was not an actual party to the operation of the business and that, therefore, the new lease agreement was entered into, not with the purpose of violating the law, in securing, sub rosa, a license for Lewis, but solely for the purpose of complying with the law for securing a license for Williams who, so far as the plaintiff knew, was to be the sole operator of the business. If this be true, the acts were acts in avoidance and not acts of evasion. Let us, at this point, assume that the trial judge found that this was so, as he was authorized to do, and that the second lease is a valid one.

For the second lease to have the effect of an overlease as contended by the majority, it must appear that the overlease conveyed to the second lessee the landlord's reversionary interest in the property, which is the subject matter of the lease for the period of time covered by the lease. A sale of the landlord's title would necessarily convey his reversionary rights. The Georgia cases cited by the majority opinion are ample authority for this. If the evidence authorizes a finding that there was no novation of the first lease by the second lease, and no intent to release the parties from their obligations to pay rent under the first lease, and that the intent of the second lease was merely to substitute tenants for the purpose of legally securing a pouring license for the leased premises, it is clear there was no intent to convey a reversionary interest to Williams by the execution of the second lease. A reversionary

interest in land is an estate in land. The leases in the present case were for a period of five years and not expressly covered by *Code* § 61-101. The second lease, nevertheless, expressly provides that it conveys no estate to the lessee but only a usufruct. In my opinion, this conclusively negatives and precludes the result engineered by the majority opinion.

I might also state that I have found no authority where the law in reference to overleases was applied in an instance where the second lease was given to a co-tenant under the first lease. This is so, no doubt, because this rule of law is only applicable where the second lease is to a party or parties different from any of those in the first lease. As is stated in LRA 1915C, pp. 190, 198 (cited by the majority): "By a concurrent lease is meant a second lease, made by the owner of the reversion, *to one other than the tenant holding under the former lease* all or part of the same premises covered by the second lease, the terms of the two leases including at least some time in common. The lessor may convey *to a third person* his reversion, by a concurrent lease, and the lessee thereunder becomes the landlord of the first lessee, with the right to collect the rent and enforce the covenants of the first lease until the expiration of the term of one or the other of the two leases." All of the cases cited by the majority are cases where the lessor conveyed to a third person his reversionary interest in the premises by a concurrent lease. From this I conclude, therefore, that the principle does not apply to the facts here.

3. Assuming, however, that I am incorrect in all of the above conclusions, and assuming that the second lease here conveyed the reversionary interest to Williams, the evidence authorizes a finding that Williams abandoned this lease and that he is asserting no rights thereunder and further that the rent sued for accrued after such abandonment took place. Williams by his own testimony showed that he was unable to continue the business, dissolved his partnership with Lewis's wife, and turned the premises over to Lewis and a man named Williamson, who succeeded him in the business partnership. There is nothing in the evidence to indicate that Williams was subleasing to his successor Williamson, or to indicate that he reserved any rights, or ever asserted any rights to collect any

rents from Lewis, or ever intended to do so. It is apparent, therefore, that if Williams abandoned the overlease and the landlord accepted this abandonment (and the evidence demands that he did) the landlord was entitled to collect the rents from the tenant under the first lease.

If the majority's view of the evidence is correct, then the evidence not only authorizes, but demands, a finding that Williams, the lessee under the second lease, evicted Lewis, the tenant under the first lease. The majority is in effect holding that a substitute landlord can collect rent from a tenant when he has evicted the tenant from the premises and has himself taken possession thereof. This is neither good sense nor good law.

In writing this dissent, I, as well as the majority, have pretermitted any questions raised by the non-joinder of Williams, a co-lessee of Lewis on the first lease, since the record does not indicate that the defendant Lewis raised any such questions.

The trial judge should be affirmed.

I am authorized to state that Judges Hall and Quillian concur in this dissent and that Judge Whitman concurs in the opinion that the trial judge should be affirmed.